**Kenneth Q. ADAMS,**
**Plaintiff-Appellant,**

v.

**Claude S. BRINEGAR et al.,**
**Defendants-Appellees.**

**No. 75-1155.**

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1975.

Decided Aug. 5, 1975.

George F. Galland, Jr., Chicago, Ill., for plaintiff-appellant.

Samuel K. Skinner, U. S. Atty., Gary L. Starkman, Martin B. Lowery, Asst. U. S. Attys., Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and CAMPBELL, Senior District Judge.[1]

SWYGERT, Circuit Judge.

The question presented is whether the district court had jurisdiction over a federal employee's claim of racial discrimination that was pending administratively on March 24, 1972, the effective date of the Equal Employment Opportunity Act of 1972.[2]

The plaintiff-appellant Kenneth Q. Adams, a black man and an employee of the Federal Highway Administration, United States Department of Transpor-

---

1. The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

2. Pub.L.No.92-261, 86 Stat. 103 (March 24, 1972), 42 U.S.C. § 2000e-16 *et seq.* (1974).

tation, brought an action in the district court pursuant to 42 U.S.C. § 2000e–5(f); 42 U.S.C. § 1981; 28 U.S.C. § 1331; 28 U.S.C. § 1361; 28 U.S.C. § 2201; and 5 U.S.C. § 704, alleging that defendants' refusal to promote him was racially discriminatory. The district court dismissed the action on jurisdictional grounds and this appeal followed.

In his complaint, the plaintiff alleged, in substance, the following facts. He has been employed by the Federal Highway Administration since 1966. In 1970 the agency assigned Adams and Clifford Wavrinek, a white man, to a newly created position: "Civil Rights Specialist, GS–13." While employed in this capacity, Adams performed substantially the same duties as Wavrinek, but unlike Wavrinek, was not paid at the GS–13 level. Instead, Adams remained at GS–12. In September 1971 Adams, pursuant to 5 C.F.R. § 713, filed a complaint with the Department of Transportation, charging that his failure to be promoted to GS–13 was the result of racial discrimination. His complaint was taken under review by the agency which made no findings concerning discrimination, but recommended that Adams receive promotion.

The promotion did not occur, however, and in 1972 Adams requested and received a hearing before the Civil Service Commission pursuant to 5 C.F.R. § 713.-217. The examiner found no racial discrimination, but recommended in the final agency report that Adams be promoted to the GS–13 level.

The Federal Highway Administration again failed to promote the plaintiff. On February 20, 1973, however, Adams was notified by defendant James Frazier, Director of the Department of Transportation's Office of Civil Rights, that his case was to be reopened and the charges reviewed once more. After examination of the questions presented in Adams' complaint, Frazier concluded that the Federal Highway Admministration's actions had involved racial discrimination. His report released on August 16, 1973 ordered the agency to promote Adams retroactively if Adams in fact had been performing GS–13 duties during the period in question. The agency, however, did not inform the plaintiff of Frazier's report and has to date refused to comply with its retroactivity provisions. While Adams has subsequently been promoted to GS–13, he has not received the backpay and privileges which he alleges were due him since November 1970.

In an effort to secure these benefits, Adams filed suit in the district court on May 29, 1974. His complaint alleges jurisdiction on numerous grounds[3] and seeks to recover all promotions, backpay, and job related benefits, as well as attorney's fees, and "such other relief as the Court deems just." After submitting its answer, the Government filed a motion to dismiss or in the alternative for summary judgment on grounds that the court lacked subject matter jurisdiction over the plaintiff's claim.

The district court granted the defendants' motion to dismiss. It held that those portions of the Equal Employment Opportunity Act of 1972 which extended the Title VII prohibitions against employment discrimination to the federal government[4] applied prospectively rather than retroactively. As a result, the district court concluded that it was without jurisdiction to hear a claim pending administratively on the act's effective date. The court also ruled that it lacked jurisdiction under the additional statutory bases alleged in the complaint.

We hold that the district court erred in concluding that section 717 of Title VII (42 U.S.C. § 2000e–16 et seq.) did not apply retroactively. We are convinced that the district court had jurisdiction to entertain Adams' complaint.

---

3. 42 U.S.C. § 2000e–5(f)(3), as amended, 42 U.S.C. § 2000e et seq. (1974); 28 U.S.C. § 2201 (1974); 28 U.S.C. § 1361 (1974); 28 U.S.C. § 1331 (1974); 5 U.S.C. § 704 (1974).

4. 42 U.S.C. § 2000e–16 et seq. (1974).

We therefore reverse and remand for further proceedings.

## I

■ Before discussing the merits of the issue, we must address the possibility that this case has been mooted by a recent memorandum filed by the United States Solicitor General.[5] In response to a petition for rehearing of the Supreme Court's denial of certiorari in *Place v. Weinberger*,[6] the Solicitor General stated that he had now concluded that section 717 applied to all cases pending administratively on the act's effective date, and represented to the court that the Government would refrain from asserting any contrary views in all pending and future cases. Despite the Solicitor General's position, we nevertheless decide the issue presented. The question before us is jurisdictional and therefore cannot be consented to by the parties. We believe that the reasons for our decision should be stated in some detail.

## II

■ The Government argues that by enacting section 717(c) Congress was creating a new substantive right in derogation of sovereign immunity. It argues that statutes relaxing traditional governmental immunities should be strictly construed and applied prospectively only. On the basis of the legislative history of section 717(c), we disagree with the Government's contention. We believe that Congress, in enacting the 1972 Amendments, was merely providing an additional remedy to enforce a preexisting right.

Freedom from racial discrimination by the federal government has long been guaranteed by the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The right has not been a hollow one. Congress has declared as federal policy the elimination of racial discrimination within all governmental agencies and empowered the President to enact provisions to further this goal.[7] Executive Orders 11246 and 11478[8] which followed the enactment of the Civil Rights Act of 1964 provided administrative remedies to enforce this congressional mandate. Complaints of employment discrimination were handled internally by each agency and were appealable to the review boards of the Civil Service Commission. The Commission was vested with the authority to issue orders and instructions to agency officials concerning any remedial action which it deemed appropriate.

This procedure, however, proved ineffective in dealing with problems of job discrimination. In an effort to eliminate a growing skepticism among employees regarding the ability of the Commission to deal fairly and adequately with their complaints, the 1972 Amendments to the Civil Rights Act of 1964 sought to strengthen the Commission's authority.[9] Among the provisions added was section 717(c) which enabled an aggrieved federal employee to have his claim reviewed by a federal district court.[10] An examination of the Senate committee report on section 717(c) reveals that judicial review of agency proceedings was regarded as "[a]n important adjunct to the strengthened Civil Service Commission responsibilities."[11]

5. United States Solicitor General's Memorandum in Response to a Petition for Rehearing in *Place v. Weinberger*, 9 E.P.D. ¶ 5329 (1975).

6. 497 F.2d 412 (6th Cir. 1974), *cert. denied*, 419 U.S. 1040, 95 S.Ct. 526, 42 L.Ed.2d 316 (1974). Of the five United States Courts of Appeals to consider the retroactivity issue, only the Sixth Circuit in *Place v. Weinberger* held against retroactivity. *See Sperling v. United States*, 515 F.2d 465 (3d Cir. 1975); *Brown v. General Services Administration*, 507 F.2d 1300 (2d Cir. 1974), *cert. granted*, 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 (1975); *Womack v. Lynn*,

164 U.S.App.D.C. 198, 504 F.2d 267 (1974); *Koger v. Ball*, 497 F.2d 702 (4th Cir. 1974).

7. 5 U.S.C. § 7151 (1964).

8. Exec.Order No. 11246, 3 C.F.R. 339 (1967), 42 U.S.C. § 2000e–5 (1974); Exec.Order No. 11478, 3 C.F.R. 803 (1971), 42 U.S.C. § 2000e–5 (1974).

9. 118 Cong.Rec. 4922 (1972) (remarks of Senator Williams).

10. 42 U.S.C. § 2000e–16(c) (1974).

11. 118 Cong.Rec. 4922–23 (1972).

The right of federal employees to seek relief from racial discrimination by the federal government was thus available some years before the passage of the Equal Employment Opportunity Act of 1972. Section 717(c) simply provided one more step in the existing review process. As the Fourth Circuit stated in *Koger v. Ball*, 497 F.2d 702, 706 (1974), the 1972 Amendments "evince a congressional policy to make the courts the final tribunal for the resolution of controversies over charges of discrimination after all administrative remedies have been exhausted."

It should be noted that Adams' administrative complaint was awaiting final agency action by the Civil Service Commission at the time the act took effect. A final agency report was not released until November 6, 1972 more than seven months after the Amendments giving him the right to file suit in the district court became law. Viewed in this light it is difficult to understand why section 717(c) should not apply to Adams' complaint. Indeed, it is possible that we do not even have a retroactivity problem. Section 717(c) provides that a federal employee may file a civil action with the district court:

> [w]ithin thirty days of receipt of notice of final action taken by a department . . . or by the Civil Service Commission upon an appeal from a decision or order of such department . . . on a complaint of discrimination based upon race, color, religion, sex or national origin . . . or after one hundred and eighty days from the filing of the initial charge with the department . . . or with the Civil Service Commission . . . or until such time as final action may be taken by a department . . . if aggrieved by the final disposition of his complaint, or by the failure to take final action on his com-

plaint. . . . 42 U.S.C. § 2000e–16(c) (1974).

After waiting for two and one half years to achieve an administrative settlement of his complaint, Adams filed suit in federal court when it became apparent that the recommended agency action would not be forthcoming. Thus, he has fully complied with the requirements of the new Amendments, and presents a valid claim before the district court. As was stated in *Hallowell v. Commons*, 239 U.S. 506, 508, 36 S.Ct. 202, 203, 60 L.Ed. 409 (1916), a statute that "takes away no substantive right, but simply changes the tribunal that is to hear the case" should be applied to pending cases. Only if Congress did not intend such an application for section 717(c) would Adams be barred from filing in the district court.

We believe that there is no indication of such congressional intent, but rather substantial evidence to the contrary. An examination of section 717(c) reveals that a federal employee's right to file a civil suit is governed by the provisions applicable under section 706.[12] The specific language of section 717(c) provides that a claimant "may file a civil action as provided by section 2000e–5 of this title . . .,"[13] and further provides that the provisions of sections 2000e–5(f) through (k) are to govern civil actions brought thereunder.[14] Thus, the two sections are interdependent. In this regard it is significant to note that the 1972 Amendments to section 706 were to apply "to charges pending with the Commission on the date of enactment of [the] Act and all charges filed thereafter."[15] While it is true that section 717 is not an amendment to section 706, we take issue with the holding of *Hill-Vincent v. Richardson*,[16] noted by the district court, that this fact alone is dispositive of the retroactivity question. In view of the interrelated character of the two sections and numerous congressional statements during debate on the bill that

12. 42 U.S.C. § 2000e–5 *et seq.* (1974).

13. 42 U.S.C. § 2000e–16(c) (1974).

14. 42 U.S.C. § 2000e–16(d) (1974).

15. 42 U.S.C. § 2000e–5 (1974).

16. 359 F.Supp. 308 (N.D.Ill.1973).

section 717 was intended to provide federal employees with the same rights to a civil action as were available to private employees,[17] we find no compelling reason why this right should not apply with equal force to pending cases of governmental discrimination. Although it must also be noted that the "Commission" spoken of in section 706 is the Equal Employment Opportunity Commission and not the Civil Service Commission, we see no basis for making a distinction on those grounds. (*See* the analysis of Judge Harvey in *Johnson v. Froehlke*, 5 F.E.P. Cases 1138 (D.Md.1973).)

## III

In addition, we believe that the holding of the Supreme Court in *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), compels our finding of retroactivity. The general guidelines formulated in *Bradley* instruct an appellate court to apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.[18] As we have indicated, rather than pointing toward prospective application, the legislative history of section 717 strongly favors retroactivity. The Government, however, argues that retroactive application of section 717 would extend liability to cases not plainly within the statute's terms and thereby violate the rule of strict construction followed in waivers of sovereign immunity. But this position ignores the result in *Bradley*. In *Brad-*

*ley* a congressional authorization[19] awarding attorney's fees against the Government was held applicable to pending school desegregation cases. Writing for a unanimous Court, Mr. Justice Blackmun ruled that even where the intervening law does not explicitly state that it is to be applied to pending cases, it is to be given recognition and effect.[20]

Finally, neither an increased scope of liability nor substantial injustice will result from retroactive application of section 717(c)'s waiver of sovereign immunity. Prior congressional and executive efforts to eradicate discriminatory employment practices had subjected federal agencies to liability long before the 1972 Amendments became law. Moreover, sovereign immunity posed no barrier to charges filed with the United States Court of Claims under Executive Order 11478 and 28 U.S.C. §§ 1346, 1491. *Allison v. United States*, 451 F.2d 1035, 196 Ct.Cl. 263 (1971); *Chambers v. United States*, 451 F.2d 1045, 196 Ct.Cl. 186 (1971).[21] A federal employee thus had at least one judicial forum available prior to March 24, 1972 where he could file his complaint apart from the administrative process. Although the Government argues that section 717(c) removed its recognized immunity from suit in the district courts,[22] it cannot successfully contend that the section created a hitherto unknown liability. The right to file suit in the United States Court of Claims existed independently of the access to the district courts provided by the Equal Employment Opportunity Act of 1972. Thus, Congress created no new liability

17. 118 Cong.Rec. 4922–23 (1972) (remarks of Senator Williams).

18. *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

19. 20 U.S.C. § 1617 (1974).

20. *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 715, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

21. We take note of the fact that Executive Order No. 11478 was rejected as a basis for asserting jurisdiction in the district court in *Gnotta v. United States*, 415 F.2d 1271 (8th Cir. 1969), *cert. denied*, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970). While we recognize the apparent contradiction between *Gnotta* and the *Allison-Chambers* sequence of cases, we find no need to resolve this split in authority. It is sufficient for our purposes to note that the Court of Claims provided a ready judicial forum for petitioner's cases. *See also Pettit v. United States*, 488 F.2d 1026 (Ct.Cl. 1973).

22. *Gnotta v. United States*, 451 F.2d 1271 (8th Cir. 1969), *cert. denied*, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970).

with the enactment of section 717(c), but merely enlarged the range of available forums.

For the foregoing reasons we conclude that section 717(c) of the Equal Employment Opportunity Act of 1972 applies retroactively to Adams' complaint. Since jurisdiction is available under 42 U.S.C. § 2000e–16 *et seq.*, we find it unnecessary to decide whether the alternative bases of jurisdiction alleged in Adams' complaint are also available. Nor do we take a position on the Government's contention that section 717(c) preempts the petitioner from claiming jurisdiction under any of these additional authorities. In addition, we express no opinion on the availability of punitive and compensatory damages under Title VII. Although this issue was raised by counsel during oral argument, it was not discussed in the briefs submitted by either party, nor was any relief beyond backpay and attorney's fees specifically requested in Adams' complaint. Since this issue is not properly before us, we express no opinion on it.

The district court's order of dismissal is reversed, and the cause is remanded for further proceedings.