June CHEWNING et al., Plaintiffs,

v.

James R. SCHLESINGER, Defendant.

Civ. A. No. 76–334.

United States District Court,
District of Columbia.

April 23, 1979.

Stephen S. Cowen (argued), Robert N. Ford, Asst. U. S. Attys., Earl J. Silbert, U. S. Atty., Washington, D. C., for defendant; Henry A. Gill, Jr. (argued), Dept. of Energy, Washington, D. C., of counsel.

Sara-Ann Determan, Karen Lee McCleary, Hogan & Hartson, Washington, D. C., for amici curiae NAACP Legal Defense and Educational Fund, Inc. and Women's Legal Defense Fund, Inc.

Gary Howard Simpson, Bethesda, Md. (argued), David N. Webster (argued), Paul Martin Wolff, Brenda V. Sullivan, Jr., F. Whitten Peters (argued), Williams & Connolly, Washington, D. C., for plaintiffs.

## MEMORANDUM

FLANNERY, District Judge.

On February 27, 1976, the plaintiff June Chewning filed a class action complaint against the Atomic Energy Commission ("AEC"), alleging a pattern and practice of sex discrimination prohibited by Section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (1976). The court subsequently certified a class to include all women employed in "professional" positions between January 19, 1975 and September 30, 1977 at the Energy Research and Development Administration ("ERDA"), AEC's successor agency, in Washington, D. C. and Germantown, Maryland. After extensive discovery, the parties entered into a consent order, which was approved by the court and entered on its docket on August 23, 1978. In that order, the parties agreed that

> The named plaintiffs and the class they now represent are prevailing parties for the purposes of the class allegations, to wit: a statistical disparity in salary accorded professional women at ERDA Headquarters, including statistical disparities in starting salary and salary advancement.

Consent Order, ¶ 1. The parties also agreed "that the named plaintiffs and class members should submit to a claims procedure before a master to be appointed by the Court," *id.*, ¶ 2, but were unable to agree "as to the appropriate standards and procedures for determining individual relief," *id.*, ¶ 3.

Pursuant to an order of the court, the parties have submitted briefs on various questions concerning the procedural and substantive standards to be applied by the court-appointed master in resolving the individual relief aspects of this case. Those questions relate to the manner in which individual claims for back pay and other appropriate individual relief should be determined by the master; the issue whether the court may approve a back pay formula that takes into account the effects of discrimination occurring before the 1972 amendments to Title VII; and the issue whether "front pay" is available in this case. Although the court did not request a briefing on the question whether interest may be paid on back pay awards, the plaintiffs have provided for interest in their draft protocol for the referral of the relief aspects of this case to the master. The court, therefore, also will consider the issue of interest in its memorandum.

### I. Principles Governing Back Pay Relief

■ The principal objective of back pay is to make persons whole for injuries suffered because of unlawful employment discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417–22, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). The parties agree that the court should look to the Supreme Court's decision in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), for guidance in fashioning standards for the award of back pay to the class members here. The plaintiffs and the defendant differ sharply, however, on two issues that bear directly on the application of *Teamsters* to the present case. First, the defendant contests the plaintiffs' assertion that the consent order should be construed as an admission by the agency that each

individual plaintiff was a victim of discrimination. Second, the defendant disputes the plaintiffs' description of ERDA's employment practices as they relate to the promotion of professionals.

In the *Teamsters* case, the Supreme Court clarified the procedures that should be used by a District Court in determining the scope of individual relief after the establishment of a pattern or practice of discrimination as to a particular class. The Government in *Teamsters* had used statistical evidence and testimony regarding specific instances of discrimination to establish that the defendant company and defendant union had engaged in a pattern of racially premised hiring practices. In articulating the standards and procedures to be used in determining the entitlement to relief of individual members of the plaintiff class, the Court rejected the defendants' contention that "if the Government has not, in the course of proving a pattern or practice, already brought forth specific evidence that each individual was discriminatorily denied an employment opportunity, it must carry that burden at the second, 'remedial' stage of trial." *Id.* at 361, 97 S.Ct. at 1868. The Court went on to say:

> The proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy. *The Government need only show that an alleged individual discriminatee unsuccessfully applied for a job* and therefore was a potential victim of the proved discrimination. As in *Franks* [*v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976)], the burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons. [footnote and citation omitted]

*Id.* at 362, 97 S.Ct. at 1868 (emphasis added). Thus, although the Court clearly stated that individual class members do not have to prove the discrimination all over again, it set forth a minimum showing that each class member must make in initiating a claim for relief: the member must show that there was a job and that the member applied for it. There are a number of reported decisions in which lower courts have followed the *Teamsters* standard. *See, e. g., Sledge v. J. P. Stevens & Co.*, 585 F.2d 625, 637 (4th Cir. 1978); *Presseisen v. Swarthmore College*, 442 F.Supp. 593, 600–01 (E.D.Pa.1977).

■ With respect to the narrow issue now before the court, the present case is distinguishable from *Teamsters* only in that the defendant here has conceded the class allegations rather than putting the plaintiffs to their proof at trial. In the court's view, therefore, there is no basis in the present record for the plaintiffs' argument that "[e]ach plaintiff and class member [should be] deemed to have automatically established a *prima facie* case, and [that] defendant must provide backpay" to each member unless the defendant can establish by "clear and convincing evidence" that a particular plaintiff would not have been promoted even in the absence of discrimination. Consent Order, ¶ 3a. Although the defendant has admitted to "statistical disparities in starting salary and salary advancement," *id.*, ¶ 1, between men and women professionals at ERDA Headquarters, it has not admitted that every professional woman was a victim of discrimination. Consequently, the court sees no justification for relieving the women class members of the requirements of proof imposed upon them by the *Teamsters* decision.

All the foregoing notwithstanding, however, the court cannot accede to the defendant's suggestion that it must require each class member to make "a clear showing of intentional discrimination based on a *McDonnell-Douglas* type standard."[1] Under that familiar test, set forth by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff may establish a *prima facie* case of discrimination by proving:

1. Brief in Support of Defendant's Position on the Relief Aspects of this Litigation, p. 8.

(i) that he belongs to a [protected] minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. [footnote omitted]

*Id.* at 802, 93 S.Ct. at 1824. Requiring the class members here to make a *McDonnell-Douglas prima facie* showing to establish their entitlement to back pay relief effectively would be to require each plaintiff to bring "forth specific evidence that each . . . was discriminatorily denied an employment opportunity," *Teamsters, supra*, 431 U.S. at 361, 97 S.Ct. at 1868, a burden the Supreme Court expressly said a trial court should not impose upon any class member. *Id.* The showing required of class members by the *Teamsters* decision at the relief stage of trial is more limited than the showing needed to establish a *prima facie* case under *McDonnell-Douglas*; as noted above, under *Teamsters* the class member need only identify the employment opportunity she was denied and show that she applied for it. *Id.* at 362, 97 S.Ct. 1843. Receding somewhat from its original position, the defendant "admits that this is not the precise, four-step approach of *McDonnell-Douglas* . . . .,"[2] but continues to insist that each class member also must show that she was qualified for the particular position. This additional showing is not mandated by the language of *Teamsters* and, to the extent that it rounds out the *McDonnell-Douglas* test, it is inconsistent with the Court's holding that, if the plaintiffs in a class action are successful in establishing a pattern or practice of discrimination, the trial court may infer that any individual hiring decision was made in furtherance of the discriminatory policy. *Id.* Neither the Court of Appeals for the Fourth Circuit nor the Court of Appeals for the Sixth Circuit in cases cited by the defendant imposed such a requirement upon the class members. *See Sledge v. J. P. Stevens & Co., supra*, 585 F.2d at 637;[3] *Mitchell v. Mid-Continent Co.*, 583 F.2d 275, 283–84 (6th Cir. 1978). In the present case, the defendant "will have the right to question the fitness of any applicant to perform the job which she seeks . . . .," *id.* at 284, after that class member has carried her burden under *Teamsters*.

■ The foregoing discussion has been based upon the assumption that the defendant's personnel system is structured in such a manner that an employee must apply for a job in order to be considered for it. It is the position of the plaintiffs, however, that no class member had to apply for a promotion at ERDA to become eligible for one, and therefore that they have satisfied the *Teamsters* requirement that a claimant show she has taken all steps necessary to be a victim of discrimination.[4] In its rebuttal, the defendant does not address fully this aspect of the plaintiffs' argument. The court finds that the record is not sufficiently developed on the nature of ERDA's employment practices for it to determine the nature of the showing the plaintiffs must make under the *Teamsters* case. Before it rules on this issue, the court will hold a factual hearing on the operation of ERDA's

2. Supplemental Brief in Support of Defendant's Position on Relief, p. 3.

3. The Fourth Circuit in *Sledge* also required each individual class member to provide the trial court "any information requested of him to assist the court in determining the amount of the economic loss he suffered as a result" of discrimination. 585 F.2d at 637.

4. According to the plaintiffs, professional employees at ERDA could be promoted through both "competitive" and "noncompetitive" procedures. They maintain that employees did not have to take any steps to be considered for

promotions under either procedure. Because noncompetitive promotions are initiated by supervisors, argue the plaintiffs, "an employee, to be eligible for such a promotion, would at the most have had only to mature in his or her abilities and responsibilities." Plaintiffs' Memorandum on Relief Aspects of this Case, p. 8. Nor did any employee have to file an application for a competitive promotion, "[b]ecause ERDA maintained a search system which was designed to include all qualified employees on every candidate list for a vacancy to be filled competitively . . . ." *Id.* at 10.

personnel system. The court will defer ruling on the appropriate role for statistics in the award of back pay until the parties have provided it with a more complete record.

## II. Right to Back Pay for Effects of Pre-Act Discrimination

The second issue the court must resolve is whether the class members are entitled to back pay to remedy any discrimination they might have suffered before March 24, 1972, the date on which Congress gave employees of the federal government the right to sue under Title VII. It is the defendant's position that a federal agency is liable in back pay only for acts of discrimination occurring since March 24, 1972, and that whatever happened to the class members in the present case before that date, "whether discrimination or not . . . simply has no legal effect on the determination of back pay entitlement here."[5] The plaintiffs vehemently disagree, contending that this case involves "continuing discrimination" going back many years and that calculation of each class member's "rightful place" for back pay purposes must take into account the effects of discriminatory conduct occurring before March 24, 1972.[6] Because the issue of the government's liability in damages for the effects of pre-1972 discrimination presents a difficult question of great importance, the court granted the motion of the NAACP Legal Defense and Educational Fund, Inc. and the Women's Legal Defense Fund, Inc. for leave to file a memorandum as *amici curiae* on behalf of the plaintiffs.

By the Equal Employment Opportunity Act of 1972 ("the 1972 Act"), Congress added a new Section 717(c) to Title VII to permit employees of the federal government who suffered employment discrimination to seek relief in the federal courts. 42 U.S.C. § 2000e–16(c) (1976). Under the 1972 Act, federal employees for the first time became entitled to back pay to make them whole for such discriminatory conduct. Before March 24, 1972, the sovereign immunity of the federal government apparently had barred the award of back pay to victims of discrimination in federal agencies. As the Supreme Court observed in *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976):

Although an action seeking to enjoin unconstitutional agency conduct would lie [before March 24, 1972], it was doubtful that backpay or other compensatory relief for employment discrimination was

---

**5.** Defendant's Response to Plaintiffs' Supplemental Memorandum on the Relief Aspects of this Case, p. 3.

**6.** Central to the plaintiffs' brief on the pre-Act discrimination issue is their contention that this pattern or practice suit involves a "continuing violation" of Title VII that had its roots in pre-Act hiring and promotional practices. The Court of Appeals for this Circuit has held that the continuing violation doctrine applies equally to patterns of discriminatory behavior directed towards a class and towards individuals. *Shehadeh v. Chesapeake & Potomac Telephone Co.*, 193 U.S.App.D.C. 326, at 340 n.73, 595 F.2d 711, 725 n.73 (1978). The defendant protests strenuously that it has not conceded any liability as to pre-1972 treatment of the class members. The record in this case reveals, however, that the plaintiffs consistently have alleged that they were victimized by discriminatory hiring practices and by a discriminatory promotional system in which, as the Fourth Circuit put it in a recent case, "the discrimination continues from day to day and a specific violation occurs whenever a promotion is

made." *Patterson v. American Tobacco Co.*, 586 F.2d 300, 304 (4th Cir. 1978). Workforce data in the form of year-end statistics for the years 1972–1976 revealed "a statistical disparity in salary accorded professional women at ERDA Headquarters," Consent Order, ¶ 1, that established a *prima facie* case the defendant admittedly could not rebut. The defendant admits "that the statistical disparities which may today exist between those class members hired prior to 1972 and their male counterparts result in large part from pre-1972 hiring and promotion practices which antedated the application of Title VII to the Federal Government." Supplemental Brief in Support of Defendant's Position on Relief, p. 19. To the extent, therefore, that the defendant followed certain hiring and promotional policies from some point in the pre-Act period into the post-Act period, it would appear to the court that the plaintiffs have made out a case of a continuing violation. At this stage of the litigation, the record is unclear concerning how far back into the pre-Act period these policies extended.

available at the time that Congress was considering the 1972 Act.

*Id.* at 826, 96 S.Ct. at 1964. The 1972 amendments to Title VII thus removed the "legal obstacles" that federal employees had faced "in obtaining meaningful remedies," including back pay, for acts of employment discrimination. H.R.Rep.No.238, 92d Cong., 2d Sess., *reprinted in* [1972] U.S. Code Cong. & Admin.News, pp. 2137, 2160.

Although many courts have addressed the question whether Congress meant the 1972 Act to apply retroactively, few have confronted the precise question now before this court. The plaintiffs cite cases from several circuits,[7] including a decision by the Court of Appeals for the District of Columbia Circuit, *Womack v. Lynn*, 164 U.S.App. D.C. 198, 504 F.2d 267 (1974), as "clearly" holding that the 1972 Act provides a remedy for discriminatory conduct in federal agencies occurring before March 24, 1972. In those cases, however, the courts said only that Section 717(c) may be applied retroactively where the complaint was pending administratively or judicially on the effective date of the 1972 amendments. The courts reasoned that, because a federal employee's right to be free from racial discrimination had existed before the passage of the 1972 Act, Section 717(c) did not create a new substantive right, but rather provided a new remedy for enforcing an existing right. They justified retroactive application of Section 717(c) to pending claims on the basis of the common-law principle that "[p]rocedural statutes that affect remedies are generally applicable to cases pending at the time of enactment." *Koger v. Ball*, 497 F.2d 702, 706 (4th Cir. 1974) (citing *Sam-*

*peyreac v. United States*, 32 U.S. (7 Peters) 222, 8 L.Ed. 665 (1833)); *Womack v. Lynn, supra*, 164 U.S.App.D.C. at 200, 504 F.2d at 269. As the defendant points out, the plaintiffs in the present case cannot bring their suit within the ambit of this familiar rule, because Chewning did not file her administrative complaint until over two years after the passage of the 1972 Act.

The court does not agree with the defendant, however, that the line of cases adduced by the plaintiffs suggests that the 1972 Act may be applied retroactively only to cases pending on the effective date of the Act. The Court of Appeals for the Fifth Circuit squarely rejected such a contention in *Huntley v. HEW*, 550 F.2d 290 (5th Cir. 1977). In *Huntley*, the court said:

> We perceive no distinction between those cases in which the illegal conduct had occurred prior to the enactment of the 1972 amendment where there was already pending a claim based upon such conduct and a case like the one we are concerned with, where the claim had not yet been filed. . . . *Laurel* [*v. United States*, 547 F.2d 917 (5th Cir. 1977)], holds that the 1972 Amendments do apply to a claim of pre-Amendment discrimination where that claim was administratively filed several months after the Amendments became effective.

*Id.* at 295–96.[8] Although the Fifth Circuit did not elaborate upon the reasoning behind its decision, it is clear that the rationale supporting the retroactive application of the 1972 Act to pending claims applies with equal force to cases involving claims of pre-Act discrimination filed after March 24,

---

7. *See, e. g., Mahroom v. Hook*, 563 F.2d 1369, 1373 (9th Cir. 1977); *Eastland v. Tennessee Valley Authority*, 553 F.2d 364, 367 (5th Cir.); *cert. denied*, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977); *Weahkee v. Powell*, 532 F.2d 727, 729 (10th Cir. 1976); *Adams v. Brinegar*, 521 F.2d 129, 133–34 (7th Cir. 1975); *Brown v. General Services Administration*, 507 F.2d 1300, 1306–07 (2d Cir. 1974), *aff'd on other grounds*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Koger v. Ball*, 497 F.2d 702, 704 (4th Cir. 1974).

8. In another circuit where the 1972 amendments were applied retroactively to a claim of pre-Act discrimination filed after passage of the 1972 Act, the court did "not deem it necessary to embrace the decision of the Fifth Circuit in *Huntley*" as the basis for its holding. *Carreathers v. Alexander*, 587 F.2d 1046, 1051 (10th Cir. 1978). The Court of Appeals for the Tenth Circuit said in *Carreathers* that it would permit retroactive application of the 1972 Act to the non-pending claim before it because "the equities are particularly strong" and because the "case also is unique and will probably not be repeated." *Id.*

1972. *See, e. g., Ettinger v. Johnson*, 518 F.2d 648, 651 n.7a (3d Cir. 1975).[9] As the courts in the pending-claim cases have observed,[10] federal employees enjoyed a statutory as well as a constitutional right to be free from employment discrimination long before passage of the 1972 Act. When Congress added a judicial remedy and authorized awards of back pay in 1972, it was not creating new rights in federal employees, but rather was affording them more effective remedies for redress of violations of preexisting rights. To exclude the effects of pre-Act discrimination from the computation of back pay in the present case would frustrate the remedial purposes of the 1972 amendments by impairing the ability of the class members to vindicate fully their long-established right to be free from employment discrimination.[11]

▌ The defendant insists, however, that, because the terms of the 1972 Act are silent on the issue of the government's lia-

bility in damages for pre-Act discrimination, full retroactive application of Section 717 would violate the rule of strict construction followed in waivers of sovereign immunity.[12] This attempt to constrict the scope of the waiver intended by Congress is directly at odds with the principle that remedial statutes, including those expressly involving the government, should be construed liberally.[13] In rejecting the contention that the 1972 Act only waived sovereign immunity prospectively, one court stated that "[i]t is a well settled rule of construction that 'a remedial statute shall be so construed as to make it effect its evident purpose and if the reason of the statute extends to past transactions, as well as to those in the future, then it will be so applied.'" *Henderson v. Defense Contract Administration Services*, 370 F.Supp. 180, 183 (S.D.N.Y.1973) (quoting *Walker v. Kleindienst*, 357 F.Supp. 749, 751 (D.D.C.

9. Although the defendant attempts to restrict the reasoning of the pending-claim cases to the facts of those cases, it has not provided the court with any basis for distinguishing between cases involving pending claims and those involving non-pending claims. The defendant cites several District Court cases, *e. g., Thompson v. Link*, 386 F.Supp. 897 (E.D.Mo.1974), in which the court held it did not have jurisdiction to award any relief for pre-Act discrimination where the claim was filed after the effective date of the Act. Those cases, however, involved stale claims of pre-Act discrimination. The Court of Appeals for this Circuit recently held that the continuing violation doctrine permits a government employee to allege pre-Act discriminatory conduct under a post-Act judicial complaint. *Bethel v. Jefferson*, 191 U.S. App.D.C. 108, 113, 589 F.2d 631, 636 (1978).

10. *See* the cases cited in *supra* note 7, particularly *Koger v. Ball*, 497 F.2d at 704–05.

11. The distinctly remedial nature of the 1972 Act as applied to federal employees distinguishes the present case from *Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977), upon which the defendant places its principal reliance. In *Hazelwood,* the Court declared:
 Racial discrimination by public employers was not made illegal under Title VII until March 24, 1972. A public employer who from that date forward made all its employment decisions in a wholly nondiscriminatory way would not violate Title VII . . . . .

*Id.* at 309, 97 S.Ct. at 2742. The alleged discriminatees in *Hazelwood* were municipal employees, who, unlike federal employees, did not enjoy a statutory right to be free from discrimination before passage of the 1972 Act. Because the 1972 Act gave state and local government employees new *substantive* rights, courts have distinguished their situation from that of federal employees. *See, e. g., Jones v. San Antonio*, 568 F.2d 1224, 1225 (5th Cir. 1978); *Popkin v. New York State Health & Mental Hygiene Facilities Improvement Corp.*, 547 F.2d 18, 20 (2d Cir. 1976).

12. It has long been established that "a waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969)).

13. 3 J. Sutherland, *Statutory Construction* § 60 01 (4th ed. 1974). "A common illustration of liberal construction of procedural statutes is found in cases giving them retrospective effect." *Id.* § 60.05. A statute including the government, "like any other, is entitled to receive a sensible and reasonable treatment." *Id.* § 62.02. *See Canadian Aviator v. United States*, 324 U.S. 215, 222, 65 S.Ct. 639, 89 L.Ed. 901 (1945) (remedial statute authorizing tort claims against the government construed liberally).

1973)).[14] Because Congress was aware of the rule favoring retroactive application of remedial statutes, it accords fully with the congressional waiver of immunity to award federal employees back pay relief for the effects of pre-Act discrimination. *Koger v. Ball, supra,* 497 F.2d at 708–09.[15] Consequently, in determining each class member's rightful place, the master may take into account the effects of continuing discrimination extending back as far as 1965, the promulgation date of the first of the anti-discrimination Executive Orders codified in the 1972 Act.[16]

### III. *Back Pay Computation Date*

█ Section 706(g) of Title VII provides that "Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission." 42 U.S.C. § 2000e–5(g) (1976). The plaintiffs and the defendant in the present case agree that "the Commission" should be read broadly to include complaints of discrimination filed administratively with other federal agencies.[17] Chewning filed her complaint with the AEC on December 26, 1974 and the parties concur that, as to her, the back pay computation date extends back to December 26, 1972.

The parties disagree, however, over the proper date for calculating the back pay claims for the rest of the class. The plaintiffs contend that December 26, 1972, the date from which Chewning's back pay will accrue, is the appropriate date for all class members. On the other hand, the defendants argue that, because Chewning did not first make class allegations until she brought this judicial action on February 27, 1976, the two-year period should commence no earlier than February 27, 1974. In support of its position, the defendant invokes the authority of *EEOC v. General Electric Co.,* 532 F.2d 359 (4th Cir. 1976), in which the court declared that "it may well be that there would be 'substantial prejudice' within the intent of the Act if any date earlier than that on which the employer was given notice of the claimed discrimination was used as the critical date for calculating a claim for backpay." *Id.* at 372.[18] Until Chewning filed the present suit, insists the

---

**14.** Under the defendant's construction of the 1972 Act, a complainant filing an administrative charge on March 23, 1972 would be entitled to full relief, while a complainant filing on March 25, 1972, one day after the Act became effective, would receive no relief. This result hardly effects the "evident purpose" of the 1972 Act. Not only does the defendant's position thwart the remedial purpose of the Act, it also offends canons of elementary statutory interpretation. The Act permits back pay to be awarded for up to two years prior to the filing of a complaint. *See infra* note 20. Therefore, as of March 25, 1972 federal employees could file claims against their employer and, according to the terms of Title VII, the United States would be liable for back pay up to two years prior to that date.

**15.** Retroactive application of the 1972 Act also is consistent with the principle that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). The legislative history of Section 717 points toward retroactive, rather than merely prospective, application. *Adams v. Brinegar, supra* note 7, 521 F.2d at 133.

**16.** As the plaintiffs and *amici* observe, the declaration of antidiscrimination contained in 42 U.S.C. § 2000e–16(a) (1976) is as broad as the policies mandated by the series of Executive Orders beginning in 1965 in which the President required compliance by federal agencies with the policy of nondiscrimination stated in the Civil Rights Act of 1964, Pub.L.No.88–352, § 701(b), 78 Stat. 241. Exec. Order No. 11246, 30 Fed.Reg. 12319 (1965); Exec. Order No. 11375, 32 Fed.Reg. 14303 (1967); Exec. Order No. 11478, 34 Fed.Reg. 12985 (1969) (superseding parts of Exec. Order Nos. 11246, 11375); Exec. Order No. 11590, 36 Fed.Reg. 7831 (1971) (amending Exec. Order 11478). *See Morton v. Mancari,* 417 U.S. 535, 549, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974).

**17.** In *Kulkarni v. Alexander,* D.C.Cir. No. 77–1510, slip op., at 3 n.3 (September 29, 1978), the Court of Appeals for this Circuit approved a District Court ruling applying the two-year back pay limitation in Section 706(g) to a suit against the United States.

**18.** The Fourth Circuit noted that the date an employer receives notice of a claim of discrimination "was the date Congress seemingly intended as the critical date for" calculating back pay awards. 532 F.2d at 372.

defendant, the agency was under no notice of its potential back pay liability to anyone in the class other than Chewning, and therefore should not be exposed to back pay claims computed from the earlier date. The plaintiffs protest that the Fourth Circuit's decision requires the defendant to show that it has been substantially prejudiced by the purported lack of notice, and that the defendant clearly has failed to meet this burden. The court can find no support for the plaintiffs' construction of *General Electric Co.* either in the decision itself or in subsequent cases that have cited the principle it enunciates.[19] The Fourth Circuit apparently believed that prejudice is inherent in lack of notice to the employer, and held that the trial court was obligated to respect the notice requirement unless the plaintiff could show "countervailing equities." *Id.* In the court's view, the plaintiffs here have shown no such equities.

■ The exchange of pleadings on the issue of notice has clarified the chronology relevant to the class allegations question. It appears that Chewning's administrative complaint raised the issue of a pattern or practice of discrimination only with respect to the treatment of women in the Division of Labor Relations. Because Chewning's complaint put the defendant on notice of its potential back pay liability to that portion of the class, those plaintiffs who worked in the Division of Labor Relations should have their back pay awards measured from December 26, 1972. The record also reveals that Chewning did not contemplate bringing a class action encompassing all professional women at ERDA Headquarters until

after the agency had denied her administrative complaint. The defendant apparently first received notice of this expanded action when Chewning filed her judicial complaint on February 27, 1976. For all class members except those who worked in Division of Labor Relations, therefore, February 27, 1974 is the relevant date for calculating any back pay remedy to which they may be entitled.[20]

## IV. Front Pay

■ The court has asked the parties to brief it on the question whether the court appropriately might award some of the plaintiffs "front pay," which one court has defined as "a monetary award . . . calculated to terminate on the date a victim of discrimination attains an opportunity to move to his 'rightful place' rather than on the date the order granting relief is entered." *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 358 (5th Cir. 1977). The defendant does not object in theory to the award of front pay to individual class members, but iterates the same concerns regarding the method for computing front pay that it raised with respect to back pay awards. The factual hearing on the defendant's personnel system will resolve any dispute regarding the appropriate procedure for identifying a particular plaintiff's rightful place. Following the agency's proposal, once a class member has established her entitlement to a certain position, she will be eligible for front pay if there is no opening at an equivalent grade for which she is entitled or if promoting her seriously

19. *See, e. g., Patterson v. American Tobacco Co.*, 535 F.2d 257, 271 (4th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); *Briggs v. Brown & Williamson Tobacco Corp.*, 414 F.Supp. 371, 377 (E.D.Va.1976).

20. Under Section 706(g), back pay liability for discrimination "exists" from the date Title VII was made applicable to the defendant employer and back pay liability "accrues" from a date two years prior to the filing of a claim of discrimination. *Albemarle Paper Co. v. Moody, supra*, 422 U.S. at 410 n.3, 95 S.Ct. 2362. The class members who would have

been promoted to higher salary levels beginning in 1965 but prior to the statutory back pay period may receive back pay awards that take this discrimination into account. This manner of computing back pay is consistent with the "make whole" purposes of Title VII and will restore deserving plaintiffs to the economic position in which they would have been absent discrimination. *See Verzosa v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 589 F.2d 974 (9th Cir. 1978); *Miller v. Miami Prefabricators, Inc.*, 438 F.Supp. 176, 180–82 (S.D.Fla.1977).

would disrupt the defendant's personnel system.

### V. *Interest*

 In their draft proposal, the plaintiffs have provided for the payment of interest on back pay awards made to the class members. They argue that, if the court decides not to award interest, adjustment of back pay by an "inflation factor" would be appropriate in this case.

The court cannot approve either the award of interest or the upward adjustment of back pay to account for inflation. It is well settled that sovereign immunity bars pre-judgment interest in claims against the United States in the absence of an express provision in the relevant statute authorizing the payment of such interest. *United States v. Thayer-West Point Hotel Co.,* 329 U.S. 585, 588, 67 S.Ct. 398, 91 L.Ed. 521 (1947); *Fitzgerald v. Staats,* 188 U.S.App. D.C. 193, 196, 578 F.2d 435, 438 (1978). Although courts have allowed interest on back pay awards in private sector cases under Title VII, the statute has no express provision that allows interest to be taxed against the United States. In the absence of such a provision, this court simply is without power to grant the plaintiffs' request for pre-judgment interest. *Fischer v. Adams,* 572 F.2d 406, 411 (1st Cir. 1978); *Richerson v. Jones,* 551 F.2d 918, 925 (3d Cir. 1977). Because the inclusion of an inflation or cost-of-living factor in back pay awards would be an indirect award of interest, such an adjustment also is barred by the employing agency's sovereign immunity.