564 F.2d 179
 16 Fair Empl.Prac.Cas. 163, 15 Empl. Prac.
Dec. P 7961
UNITED STATES of America and Equal Employment Opportunity
Commission, Plaintiffs-Appellants, Cross-Appellees,
v.
EAST TEXAS MOTOR FREIGHT SYSTEM, INC., Defendant-Appellee,
International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America,
Defendant-Appellee, Cross-Appellant.
 No. 75-3332.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 5, 1977.
 
 Douglas S. McDowell, Washington, D.C., amicus curiae, for Equal Employment Advisory Council.
 Griffin B. Bell, U.S. Atty. Gen., J. Stanley Pottinger, Asst. Atty. Gen., Brian K. Landsberg, William C. Graves, Dept. of Justice, Washington, D.C., for amicus curiae, for the United States.
 
 
 1
 Debra A. Millenson, Gerald D. Letwin, Charles L. Reischel, Beatrice Rosenberg, Attys., Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Jr., Assoc. Gen. Counsel, Washington, D.C., for EEOC.
 
 
 2
 George E. Seay, William C. Strock, Dallas, Tex., for East Texas Motor Freight, Inc.
 
 
 3
 Richard C. Hotvedt, Harry A. Rissetto, Washington, D.C., G. Wm. Baab, L. N. D. Wells, Jr., Dallas, Tex., for Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America.
 
 
 4
 Appeals from the United States District Court for the Northern District of Texas.
 
 
 5
 Before GOLDBERG and TJOFLAT, Circuit Judges, and WYATT,* District judge.
 
 WYATT, Senior District Judge:
 
 6
 These are separate appeals by the United States and by the Equal Employment Opportunity Commission (EEOC) from orders filed on May 21, 1975, and on June 26, 1975, in the United States District Court for the Northern District of Texas (Honorable Sarah T. Hughes, District Judge). There is a cross appeal by defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("the Union") from the order of May 21, 1975.
 
 1.
 
 7
 The action was commenced on June 29, 1972 by the Attorney General in the name of the United States as plaintiff. It was said to be brought to enforce provisions of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e and following) and certain obligations imposed by Executive Order No. 11246 (30 F.R. 12319). As to Title VII, the action was authorized by 42 U.S.C. § 2000e-6(a).
 
 
 8
 The defendants named were: East Texas Motor Freight ("ET"), the Union and International Association of Machinists and Aerospace Workers ("Machinists"). Machinists defaulted by filing no answer and for purposes of this appeal may be disregarded.
 
 
 9
 ET is an extensive common carrier of motor freight. The Union through local union affiliates represents a majority of ET employees. The local union affiliates and ET are parties to collective bargaining agreements, approved by the Union.
 
 
 10
 The claim was that ET as a policy and practice discriminated against blacks and persons of Spanish origin and that the collective bargaining agreements with the Union by their seniority provisions prevented transfer to better jobs of minorities, who could not carry their seniority for bidding and for layoffs. Thus, it was said that the seniority provisions of the Union agreements perpetuated the past discrimination.
 
 
 11
 ET has over-the-road (OTR) truck drivers, who drive between terminals in different cities, and city drivers, who drive only in and about the city in which their assigned terminal is located. OTR drivers have the better and higher paid jobs and the minorities were said to have been excluded from this category by ET.
 
 
 12
 The United States and ET entered into a proposed consent decree which was approved by the District Court and signed on February 18, 1974, and filed on February 19, 1974. The Union did not consent to the decree; it opposed the entry of that decree.
 
 
 13
 The consent decree settled all issues between the United States and ET. It provided for elimination of discriminatory practices and for various forms of affirmative action by ET. It did not affect seniority provisions of union agreements but left these for resolution after trial of the issues between the United States and the Union. As part of the consent decree ET paid $175,000 in back pay to members of the affected class.
 
 
 14
 A proposed pretrial order, signed by counsel for plaintiff United States, for ET, and for the Union was filed on May 17, 1974. By order of the District Court, filed May 22, 1974, this proposal became "a formally adopted pretrial order". From this order and from all else, it was evident that the issue to be tried between the plaintiff and the Union was whether the seniority provisions of the collective bargaining agreements between the Union and ET violated Title VII and the Executive Order because they perpetuated the effects of the discrimination practiced by ET. The plaintiff asked that this issue be resolved in its favor, that an award of back pay be made against the Union, and that (despite the agreements between ET and the Union) "full company seniority carryover" be awarded to members of the affected class transferring under provisions of the consent decree. The Union opposed all this, and defended the seniority provisions.
 
 
 15
 By order filed January 24, 1975, EEOC was substituted as a party plaintiff for the United States as to all Title VII aspects of the action. This was in accordance with 42 U.S.C. § 2000e-6(d). The United States was left in the action as a party plaintiff as to those aspects of the action relating to Executive Order 11246.
 
 
 16
 The trial was before the District Court without a jury, beginning on April 21, 1975 and ending, after interruptions, on May 6, 1975. The adversaries were the United States and EEOC on the one hand, and the Union on the other. ET continued as a party to the action but claimed that the consent decree removed it as an active litigant.
 
 
 17
 The District Court on May 21, 1975, signed and filed an "order", which is also a memorandum opinion and from which these appeals are taken.
 
 
 18
 The District Court found that the "seniority system" in the collective bargaining agreements was a barrier to the movement of minorities to the desirable OTR jobs. The District Court awarded "seniority relief" in specified respects, in disregard of the contract seniority provisions, and directed that the parties make "any necessary revisions in seniority under the applicable collective bargain agreements". The District Court denied any back pay award against the Union on the ground that under the consent decree the affected class had already been "fully compensated".
 
 
 19
 The two plaintiffs then moved to amend the May 21, 1975, order so as to award back pay against the Union and to expand the seniority rights to be granted.
 
 
 20
 By order with memorandum opinion, filed June 26, 1975, the District Court denied the motion to amend, leaving the May 21, 1975, order to stand as filed. The denial of back pay against the Union was rested, however, on a different ground: that the employer was principally responsible for the discrimination.
 
 
 21
 These appeals followed.
 
 2.
 
 22
 When the appeals were reached for argument in April 1977, it appeared that certiorari had been granted by the Supreme Court in cases whose decision would have a significant bearing on the disposition of the appeals in the case at bar. The cases then pending in the Supreme Court were (1) International Brotherhood of Teamsters v. United States and T.I.M.E.-DC v. United States (consolidated; cert. granted May 24, 1976, 425 U.S. 990, 96 S.Ct. 2200, 48 L.Ed.2d 814; referred to in short as the "Teamsters" case) and (2) East Texas Motor Freight System, Inc. v. Rodriguez and two other cases (cert. granted May 24, 1976, 425 U.S. 990, 96 S.Ct. 2200, 48 L.Ed.2d 814; referred to in short as the "Rodriguez" case).
 
 
 23
 The decisions in Teamsters and Rodriguez were handed down on May 31, 1977. The opinion and result in Rodriguez are not relevant to the issues here on appeal. The Teamsters opinion, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 and result are highly relevant here and must be examined.
 
 3.
 
 24
 In the Teamsters case, the employer company was a motor freight carrier, the Union was the same as here, the discrimination charged against the company was the same as that charged here, and the seniority system embodied in contracts with the Union was the same seniority system in the union agreements here in suit.
 
 
 25
 The seniority system set out in the union contracts has, as a principal feature, seniority by bargaining unit. An OTR driver is in an OTR driver bargaining unit; a city driver is in a city driver bargaining unit. Transfer from city driving to OTR driving means loss of all seniority, thus discouraging transfers and thereby perpetuating prior discrimination.
 
 
 26
 The Supreme Court in the Teamsters case held that Section 703(h) of Title VII (42 U.S.C. § 2000e-2(h)) made it lawful to apply a seniority system even where "it may perpetuate pre-Act discrimination" (97 S.Ct. at 1864). The seniority system must be "bona fide" (42 U.S.C. § 2000e-2(h)) but in the case at bar it was conceded that the union contracts were "neutral on their face" and that no contention was made by the government that they were "negotiated for a discriminatory purpose" (App. 88, 89).
 
 
 27
 As to post-Act discrimination, the Supreme Court ruled, in Teamsters and in United Air Lines v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571, that its perpetuation by a seniority system did not make the system unlawful but that by timely action retroactive seniority relief for individual employees could be secured.
 
 
 28
 The conclusion in Teamsters was that "the Union's conduct in agreeing to and maintaining the (seniority) system did not violate Title VII" (97 S.C. at 1865).
 
 
 29
 In ordering the cases remanded to the District Court, the Supreme Court in Teamsters established principles for guidance as to retroactive seniority. No employee who suffered discrimination before the effective date of the Act (July 2, 1965) can be given any relief. No employee can be given retroactive seniority to a date earlier than the effective date of the Act.
 
 
 30
 But employees who suffered from discrimination after the effective date of the Act can, on the necessary showing, obtain seniority relief within the principles of Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). The kind and character of showing on a number of points, as well as the burden of proof in some instances are explained in the Teamsters opinion.
 
 4.
 
 31
 In the light of the opinion in Teamsters, it is clear that under Title VII the District Court correctly decided two of the matters about which the plaintiffs originally urged reversal: (a) there can be no monetary award against the Union, and (b) use of the Union's grievance procedure in the collective bargaining agreements for one of the steps in resolving seniority disputes was a proper exercise of discretion (in that it was held that those agreements did not violate Title VII). The plaintiffs concede that the back pay claim is eliminated by the Teamsters decision because it was based on Title VII; their appeal in this respect was "withdrawn" (Supplemental Brief, p. 2). As will later be seen, plaintiffs continue to urge that the Executive Order will support the award of retroactive seniority relief.
 
 
 32
 It appears that, as indicated before, even after the Teamsters decision some retroactive seniority relief can properly be granted to "individual employees" under Title VII (97 S.Ct. at 1865), if the necessary showing of post-Act discrimination is made and other evidence adduced. The difficulty on the present record is that the case was not tried as to individual employees and no distinction was made as to pre-Act and post-Act discrimination as to them. As counsel for plaintiffs explained at one point: ". . . we have not put up proof on trial specifically for them, but it is also true, as the Court of Appeals for the Fifth Circuit has held in United States versus Time DC just recently, it would be ridiculous because of the very nature of a Title 7 lawsuit to put on proof on each and every specific individual" (Minutes, October 3, 1975 hearing, p. 18). All this, of course, has been changed by the Teamsters decision.
 
 
 33
 It is apparent that on the record before it, the District Court, not then having the benefit of the Teamsters opinion, made no attempt to separate pre-Act and post-Act discrimination. The order of May 21, 1975, shows this by its terms. Moreover, in their supplemental brief (p. 9) the plaintiffs concede that about 75% of the retroactive seniority dates mandated below were for dates before the effective date of the Act, a result clearly against part of the decision in Teamsters, 97 S.Ct. at 1865.
 
 
 34
 In this state of affairs, as to all claims under Title VII we are required to affirm the orders appealed from to the extent that they deny any money award against the Union and to the extent that they provide for use of the grievance procedure of the union contracts as a step in the resolution of retroactive seniority disputes for individual employees; in all other respects, the orders appealed from must be vacated and the action remanded to the District Court for further proceedings consistent with the principles laid down in the Teamsters opinion and consistent with this opinion.
 
 5.
 
 35
 It remains to consider whether the claims of plaintiffs based on Executive Order 11246 require a different result. The argument for plaintiffs, after the Teamsters decision, is that the award of seniority rights by the District Court should be sustained on the basis of the Executive Order but at the same time should be modified to reflect the points made by plaintiffs on their appeal taken before the Teamsters decision. The argument is presented by both plaintiffs but since plaintiff EEOC was made a party only with respect to Title VII aspects, only the United States as plaintiff appears to have standing to urge the Executive Order. We do not dwell on this point but will continue to refer to both plaintiffs.
 
 
 36
 The Executive Order imposes obligations on government contractors and subcontractors designed to eliminate employment discrimination of the same sort to which Title VII is directed. The order is authorized by the broad grant of procurement authority. 40 U.S.C. § 486(a).
 
 
 37
 As the complaint makes clear, it is only ET which is a government contractor or subcontractor; the Union is neither.
 
 
 38
 The Secretary of Labor is responsible for the administration of the Executive Order.
 
 6.
 
 39
 There seems to be no authority in the Executive Order for any action against a labor union except a union "engaged in work under government contracts" and as to such a union the action authorized is for violation of Title VI or Title VII and this only after "best efforts" to cause cooperation (Sec. 207). It is not claimed that the Union here was "engaged in work under government contracts" and, of course, if it were, only a Title VII action would be authorized.
 
 7.
 
 40
 There are "sanctions and penalties" provided in the Executive Order (Sec. 209(a)) but none of these support the present argument of plaintiffs.
 
 
 41
 Section 209(a)(3) authorizes the Secretary to recommend action under Title VII but as to labor unions this must refer to those "engaged in work under government contracts" and thus does not refer to the Union here. But even if this section did refer to the Union defendant, it would not support any present argument for plaintiffs because the authority is for a Title VII action only.
 
 
 42
 Section 209(a)(2) authorizes the Secretary, where there are violations of contractual provisions, to recommend proceedings to enforce those provisions. There are no contractual provisions to be enforced against the Union here, which is not a government contractor nor subcontractor. The section does speak of enjoining "organizations" etc. who "prevent compliance with the provisions of this Order". There is no claim in the complaint nor elsewhere that the Union has prevented or attempted to prevent compliance with the Executive Order. But even if an action against the Union under the Executive Order were authorized, it would necessarily be an action to enforce contract provisions by way of damages or an injunction; nothing in the Order suggests any authority to direct retroactive seniority benefit to third party discriminatees.
 
 8.
 
 43
 This Court has ruled that the Executive Order has the force and effect of law and that there may be judicial proceedings to enforce its provisions against a government contractor. United States v. New Orleans Public Service, Inc., 553 F.2d 459, petition for rehearing en banc denied 559 F.2d 30 (1977) (5th Cir. 1977; the "NOPSI case"). In NOPSI, however, the sole defendant was a supplier of services to the government a public utility supplier which had declined to accept the contract provision of the Executive Order. This Court, in a divided decision, held that the utility was nonetheless a government contractor. While the Executive Order was thus held applicable, the Court directed that enforcement be carried out in the first instance by administrative, not judicial, action. This was because of the following principle: "The basic approach of the Executive Order program, as implemented, is enforcement by executive agencies, in particular the Department of Labor, even though the Order itself provides the judicial enforcement alternative in Section 209(a)(2)" (553 F.2d at 474). There is nothing in the NOPSI decision to support the present argument of plaintiffs as to a labor union which is not a government contractor.
 
 9.
 
 44
 If we assume, however, that the Executive Order does authorize an action against the Union to award retroactive seniority relief to individual employees, then the issue is whether a bona fide seniority system is lawful under Title VII (by virtue of Section 703(h) of Title VII) but unlawful under the Executive Order.
 
 
 45
 The plaintiffs argue that the obligations on government contractors under the Executive Order are "above and beyond" those imposed on employers by Title VII because the Executive Order contains no provision similar to Section 703(h) of Title VII (Supplemental Brief, p. 11). This is an argument never made until after the Teamsters decision.
 
 
 46
 The argument cannot be accepted because Congress has declared for a policy that a bona fide seniority system shall be lawful. The Executive may not, in defiance of such policy, make unlawful or penalize a bona fide seniority system. Youngstown Co. v. Sawyer, 343 U.S. 579, 587-589, 72 S.Ct. 863, 96 L.Ed. 1153 (1952). This Court, in the recent Nopsi decision (above cited), recognized that an order of the Executive has the force of law only "if it is not in conflict with an express statutory provision" (553 F.2d at 465). Section 703(h) of Title VII is such a provision. The authorities cited by plaintiffs, to whatever extent applicable, are before the Teamsters decision and are made obsolete by that decision.
 
 
 47
 The Supreme Court made it clear in Teamsters that parties to seniority agreements could not be required to subordinate their rights to those of pre-Act discriminatees because this would be "a perversion of the congressional purpose" (97 S.Ct. at 1863). The Court added: "Congress did not intend to make it illegal for employees with vested seniority rights to continue to exercise those rights, even at the expense of pre-Act discriminatees" (97 S.Ct. at 1864). The quoted language is not based on any specific words in Title VII but on the fixed intent of Congress and the policy behind that intent.
 
 
 48
 Moreover, the Supreme Court in Teamsters (97 S.Ct. at 1869) emphasized earlier decisions that Title VII courts had been given broad equitable powers so as to enable them to give the "most complete relief possible". In this context, relief was limited to identified individual victims for whom the necessary showing could be made. If such relief is the "most complete . . . possible", the Executive Order could scarcely be interpreted to demand more.
 
 10.
 
 49
 The Supreme Court itself gives a fairly strong indication that the principles in Teamsters are not to be limited to claims under Title VII. In Sabala v. Western Gillette, Inc., 516 F.2d 1251 (5th Cir. 1975), a similar situation to that at bar, claims against the employer were under both Title VII and 42 U.S.C. § 1981 but those against the unions were "on Section 1981 exclusively" (516 F.2d at 1254). This Court granted relief against employer and unions; both employer and unions petitioned for certiorari. After the Teamsters decision, the Supreme Court granted the petition of the unions (as well as that of the employer), vacated the judgment of this Court and remanded to this Court "for further consideration in light of" the Teamsters decision. 431 U.S. 951, 97 S.Ct. 2670, 53 L.Ed.2d 268 (1977). This Court then considered it "appropriate for the District Court, in the first instance, to reconsider its decision in light of" the Teamsters decision in the Supreme Court and remanded to the District Court for that purpose. 559 F.2d 282, 283 (5 Cir. 1977).
 
 11.
 
 50
 There is a cross-appeal by the Union to be considered.
 
 
 51
 The first point on the cross-appeal is said to be error in the District Court in respect of seniority relief by provision for a class rather than on an individual basis. What has already been said as to the effect of the Teamsters decision on the appeal of plaintiffs disposes of this point. The orders appealed from are being vacated as to the seniority relief granted by the District Court and the Union cross-appellant on remand may urge its contention before that Court in the light of the Teamsters decision.
 
 
 52
 The second point on the cross-appeal is that the local unions were indispensable parties. This argument by the Union (international) was rejected by this Court in T.I.M.E-DC, 517 F.2d 299, at 310-11; the Supreme Court made no comment on the matter.
 
 
 53
 The third point on the cross-appeal is that the Union (international) was not a proper party because it had no sufficient connection with the collective bargaining agreements containing the seniority provisions. This Court held to the contrary in TIME-DC, already cited, and the Supreme Court stated that the Union (referring to this cross-appellant) "will properly remain in this litigation as a defendant . . . ." 431 U.S. at 356, 97 S.Ct. at 1865 fn. 43.
 
 
 54
 The orders appealed from are affirmed to the extent that they deny any money award against the Union, to the extent that they provide for use of the grievance procedure of the union contracts as a step in the resolution of retroactive seniority benefits for individual employees, to the extent that they reflect a decision that the local unions are not indispensable parties, and to the extent that they find the Union (the international) a proper party defendant. The orders appealed from are in other respects vacated and the cause remanded to the District Court for further proceedings in the light of International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), of other relevant decisions of the Supreme Court and of this Court rendered since the trial of this case, and of this opinion. The parties should be free to submit new evidence subject to such limitations as the District Court may appropriately impose.
 
 
 55
 AFFIRMED IN PART; VACATED AND REMANDED IN PART.
 
 
 
 *
 Senior District Judge of the Southern District of New York, sitting by designation