Henry **INGRAM**, James Britt, William Moody, and Roy T. Floyd, Individually and on behalf of all persons similarly situated, Plaintiffs,

and

Frances Williams, Edward Milon, Horace Mitchell, Herbert Bruton, Jovino Garcia, Intervenors,

v.

**MADISON SQUARE GARDEN CENTER, INC.,** Madison Square Garden Corporation, Allied Maintenance Corporation, Allied Public Events Service Corporation, and Local # 3 I.B.E.W., Defendants.

Shelly L. **ANDERSON**, James L. Perry, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

**MADISON SQUARE GARDEN CENTER, INC.,** Madison Square Garden Corporation, Allied Maintenance Corporation, Allied Public Events Service Corporation, Local 3 I.B.E.W., Local 54, Service Employees International Union, Defendants.

Nos. 76 CIV 5870 (LBS), 78 CIV 1453 (LBS).

United States District Court, S. D. New York.

Dec. 13, 1979.

See also, D.C., 482 F.Supp. 414.

■■■■■■■■■■

Lewis Tesser, New York City, for plaintiffs.

Menagh, Trainor & Rothfeld, Norman Rothfeld, New York City, for defendant Local Union No. 3, I.B.E.W.

## OPINION

SAND, District Judge.

On October 3, 1979, this Court held that the manner in which Local # 3, International Brotherhood of Electrical Workers ("Local 3") referred workers to Madison Square Garden ("the Garden") for employment as "laborers" violated both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1970) and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1970).[1] The Court found that the plaintiffs in the first of these two consolidated class actions,[2] the "Ingram" plaintiffs, were entitled to recover under § 1981 only, while plaintiffs in the second action, the "Anderson" plaintiffs, were entitled to recover under both Title VII and § 1981.[3] Pursuant to the Court's initial decision to bifurcate the trial into a liability and a remedial stage, a hearing on all remedial issues was held on October 17, 1979, and both parties submitted briefs shortly thereafter.

Plaintiffs seek an injunction ordering Local 3 to regularize its referral practices[4] and to refer to the Garden "in order of their current seniority" those class members who desire a laborer's position. Plaintiffs also seek full backpay for all class members who unsuccessfully applied for the job of laborer or who would have applied but for their belief that such application would be futile.

---

1. The other defendants in these actions entered into a consent decree with plaintiffs which was approved by this Court in an opinion dated October 23, 1979. The factual and procedural background of this litigation is described in the Court's October 3, 1979 opinion (hereafter "*Op.*").

2. The four plaintiff classes involved here together compromise all black and hispanic persons who have been or will in the future be employed as "cleaners" at the Garden. *See Op.* at p. 416 of 482 F.Supp.

3. The Ingram plaintiffs' Title VII claims against Local 3 were dismissed after plaintiffs' counsel conceded that they were barred by the failure of the Ingram plaintiffs to name Local 3 in the original E.E.O.C. proceeding. *Op.* at n.3. Claims by both the Ingram and Anderson plaintiffs under the Civil Rights Act of 1871, 42 U.S.C. § 1985 (1970), were dismissed in accord with the Supreme Court's recent decision in *Great American Federal Savings & Loan Assoc. v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). *See Op.* at p. 926.

4. Specifically, plaintiffs seek an injunction ordering Local 3 to allow class members to register with Local 3 for referral to the Garden as laborers, and to maintain a list of those class members seeking a referral. The union would also be required to post conspicuously within the Garden notice of how to register on said referral list.

Finally, plaintiffs seek an injunction ordering Local 3 to credit all class members who become laborers with full seniority for all purposes for the same number of years that they worked as cleaners at the Garden. Reasonable attorneys' fees and costs are also sought.

■ The Court finds that, as a general matter, an award of backpay, retroactive seniority and attorneys' fees is appropriate here. The case will now be referred to Magistrate Leonard A. Bernikow (or such other Magistrate as he shall designate) as Special Master under F.R.Civ.P. 53 who, in accordance with the general guidelines set forth below, will make recommendations to the Court as to both the entitlement of individual class members to such relief and the amount appropriately chargeable to defendant for attorneys' fees and costs.[5] Plaintiffs' request for prospective injunctive relief is granted as modified herein.

## I. Retroactive Seniority

■■ When a court finds that an employer or union has engaged in a policy of unlawful employment discrimination, class action plaintiffs are not required to introduce specific evidence of individual acts of discrimination at the remedial stage of the proceeding. The proof supporting the finding of liability in such a case also "supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 361–2, 97 S.Ct. 1843, 1868, 52 L.Ed.2d 396 (1977). Where such a policy is found to exist, the Supreme Court

has made clear that, as a general matter, the District Court must ordinarily grant seniority relief, absent reasons for denying such relief which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination and making persons whole for injuries suffered. *Teamsters v. United States*, 431 U.S. at 365, 97 S.Ct. 1843; *Franks v. Bowman Transport Co.*, 424 U.S. 747, 771, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). Since defendant Local 3 has made no argument that such reasons exist here and since this Court has already found that Local 3 engaged in a policy of unlawful employment discrimination, the Court now concludes that an award of retroactive seniority is appropriate. This, however, does not necessarily mean that each class member is entitled to such relief. Only *actual* victims of Local 3's discriminatory referral practices are entitled to retroactive seniority. *Teamsters v. United States*, 431 U.S. at 371–372, 97 S.Ct. 1843.

■ There are two means by which class members can demonstrate that they are actual victims. The first is for a class member to prove that he or she actually applied to Local 3 for referral to the Garden as a laborer. Once such an application is established, there is a presumption that the class member involved is entitled to retroactive seniority, and the burden is on the union to show that its failure to refer was for nondiscriminatory reasons. *Teamsters v. United States*, 431 U.S. at 362, 97 S.Ct. 1843. In this case, however, Local 3's referral practices made a formal application for reference to the Garden impossible: there was simply no established application procedure, and union officials deliberately frus-

---

5. Reference to a master or magistrate for such purposes during the remedial stage of employment discrimination litigation is common. *See, e. g., United States v. Lee Way Motor Freight*, 21 EPD ¶ 30,286 (10th Cir. 1979) (backpay award, special master); *E.E.O.C. v. Enterprise Association Steamfitters Local # 638*, 542 F.2d 579 (2d Cir. 1976) (recommending reference of individual backpay claims to a special master); *Meadows v. Ford Motor Co.*, 510 F.2d 939 (6th Cir. 1975) (retroactive seniority award, special master); *United States v. Masonry Contractors Association*, 497 F.2d 871 (6th Cir. 1974) (back-

pay award, magistrate as special master); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211 (5th Cir. 1974) (backpay award, special master). As it has done throughout the course of these proceedings, the Court encourages resolution of this controversy by means more efficient, economical and expeditious than a continuation of this litigation. Our reference to a magistrate as a special master is not intended to preclude any suggestions the parties might care to make promptly to the Court, on consent, of any alternative procedure or master.

trated informal attempts by class members to secure a laborer's position. *See Op. at. pp.* 924–925; 925–926. A liberal construction of the term "application" is thus called for if class members are to be restored to their "rightful place" in the seniority scheme. *See Acha v. Beame*, 570 F.2d 57 (2d Cir. 1978); *James v. Stockham Valves & Fittings Co.*, 559 F.2d 310 (5th Cir. 1977). Accordingly, any expression by a class member to a Local 3 official evidencing a desire either to become a laborer or to acquire information as to how to obtain a referral will be treated as an "application" for purposes of determining whether that class member was an "actual victim" of Local 3's discriminatory employment practices. To do less would penalize plaintiffs for union referral procedures and record-keeping practices which have already been condemned by this Court as violative of the employment discrimination laws. *See E.E. O.C. v. Local 28 of the Sheet Metal Worker's International Assoc.*, 532 F.2d 821, 832 (2d Cir. 1976); *Carter v. Shop Rite Foods, Inc.*, 470 F.Supp. 1150 (N.D.Tex.1979) (lack of formal application procedure was itself a tool of discrimination).

■■ Absent an application as defined above, a second and more difficult way for class members to demonstrate that they were actual victims of Local 3's discriminatory referral practices is to prove that they were qualified for a laborer's position and that they would have applied for a referral had it not been for those practices. *Teamsters v. United States*, 431 U.S. at p. 368, 97 S.Ct. 1843 (referring to the nonapplicants' "not always easy burden".) In this case, the Court has already found that the atmosphere at the Garden was such that class members could reasonably have believed that seeking a referral from Local 3 would be futile. *See Op.* at pp. 925–926. Such a

finding, while essential to the nonapplicants' case, does not mean that all nonapplicants who now seek laborers' positions are entitled to retroactive seniority. *Teamsters v. United States*, 431 U.S. at pp. 369–371, 97 S.Ct. 1843. Each such nonapplicant must come forward with evidence that he or she desired a laborer's job, possessed the requisite qualifications, and would have sought a referral but for the Union's discriminatory practices. Evidence of a class member's desire to become a laborer may consist of an informal inquiry or expression of interest to someone other than a Local 3 official,[6] or even an "unexpressed desire credible and convincing." *Teamsters v. United States*, 431 U.S. at p. 371, n.58, 97 S.Ct. 1843. *See, e. g., United States v. East Texas Motor Freight System, Inc.*, 20 EPD ¶ 30,103 (N.D. Tex.1979) (making individual retroactive seniority determinations for nonapplicants). The question is a factual one, but if a change from cleaner to laborer would have entailed a loss of seniority at the time the class member involved desired such a change,[7] then whether that class member would have accepted a laborer's position at that time despite the loss of seniority is a relevant if not determinative consideration. *See Teamsters v. United States*, 431 U.S. at pp. 370–371, 97 S.Ct. 1843.

■ Although plaintiffs seek full seniority for the number of years that qualifying class members who become laborers worked at the Garden, no class member may be given retroactive seniority to a date earlier than the effective date of Title VII or the date of his application or proven "desire", whichever is later.[8] *Teamsters v. United States*, 431 U.S. at pp. 356–357, 97 S.Ct. 1843. Thus, an applicant or nonapplicant who qualifies for seniority relief under the standards set out above will be granted retroactive seniority as of the date of the

---

**6.** An inquiry or expression of interest to a Local 3 official should be treated as an "application". See discussion of applicants, *supra.*

**7.** Whether this was the case, and whether the situation was the same or different when cleaners were employed by the Garden as opposed to being employed by defendant "Allied", *see Op.* at pp. 922–923, is not clear from the record

now before the Court. These are matters which should be considered by the magistrate.

**8.** The same limitation date applies regardless of whether an individual class member is recovering under Title VII or § 1981 or both. *See* discussion *infra.*

next laborer hire resulting from a Local 3 referral which followed the class member's application or qualifying desire, subject to a maximum date of July 2, 1965. *See, e. g., Harper v. General Grocers Co.,* 590 F.2d 713 (8th Cir. 1979); *Sagers v. Yellow Freight System, Inc.,* 529 F.2d 721 (5th Cir. 1976); *Linebaugh v. Auto Leasing Co.,* 18 EPD ¶ 8,904 (W.D.Ky.1978) (retroactive seniority awarded "as of date [plaintiff] should have been employed by defendant", *i. e.,* as of date of next hire following her application). The source and date of laborer hires should be drawn from the books and records of the employer and the evidence adduced at trial, but there is a strong presumption that most if not all laborer hires were the result of a Local 3 referral. *See Op.* at pp. 924–925. Evidence of applications and of the "desire" and qualifications of nonapplicants may be drawn from the testimony at trial, from depositions, interrogatories and other documents admitted into evidence, and, if necessary, from testimony at hearings held before the magistrate.[9] Evidence of the union's nondiscriminatory reasons for its failure to refer individual class members should also be presented to the magistrate.[10]

Although this procedure for identifying actual victims of Local 3's discriminatory practices and restoring them to their "rightful place" will "necessarily involve a degree of approximation and imprecision", the Court believes that it is both well within its broad equitable powers under Title VII to fashion the most complete relief possible

and consistent with the Supreme Court's specific mandate to " ' "recreate [as nearly as possible] the conditions and relationships that would have been had there been no" ' unlawful discrimination". *Teamsters v. United States,* 431 U.S. at p. 372, 97 S.Ct. at p. 1873 (quoting *Franks v. Bowman Transport Co.,* 424 U.S. at p. 769, 96 S.Ct. 1251). *See also, Achca v. Beame, supra; James v. Stockham Valves & Fittings Co., supra* (under "rightful place" doctrine, sufficient retroactive seniority is given to permit the advancement and layoff protection the victim of the discrimination would have enjoyed but for the discrimination).

■ Finally, while the Ingram plaintiffs are entitled to recover under § 1981 and not under Title VII, the Court notes that the two statutes have generally been similarly interpreted and applied, *see, e. g., Carrion v. Yeshiva University,* 535 F.2d 722 (2d Cir. 1976), and sees no reason why successful § 1981 plaintiffs should not be eligible for a retroactive seniority award. *See Williams v. DeKalb County,* 577 F.2d 248 (5th Cir. 1978) (backpay award appropriate in a § 1981 suit). Accordingly, the Ingram plaintiffs' individual entitlements to retroactive seniority will be determined in accordance with the standards set forth above, including the maximum seniority date of July 2, 1965. *See Johnson v. Goodyear Tire & Rubber Co.,* 491 F.2d 1364, 1374–75, 1378–79 (5th Cir. 1974) (limiting the availability of backpay relief under § 1981 to the effective date of Title VII).

**9.** The Court finds credible the trial testimony of class members who described their efforts to obtain a laborer's position by speaking to the Local 3 shop steward or other union personnel, and the magistrate is instructed to find, subject to rebuttal evidence by the defendant, that those class members are eligible for retroactive seniority. As to the remaining class members seeking similar relief, the Court has been informed by plaintiffs' counsel that much of the information needed to make individual eligibility determinations is contained in depositions or interrogatory responses, some of which have not been admitted into evidence. While the magistrate may certainly rely on everything which has been admitted, information not admitted should be considered by the magistrate only if properly admitted in the further remedi-

al stage of this litigation. Oral testimony before the magistrate may be desirable in any event since credibility determinations may play a critical role in individual eligibility decisions, particularly in the case of nonapplicants.

**10.** In dealing with the seniority remedy, the magistrate should consider and report to the Court as to whether a "competitive" (layoff protection) v. "noncompetitive" (vacation time) seniority distinction is possible here and whether, in light of the history of the employment structure at the Garden, *see Op.* at pp. 922–924, cleaners who become laborers should maintain full seniority for noncompetitive purposes for the number of years they worked at the Garden as cleaners.

As the Fifth Circuit stated in *Johnson*, the "balancing of the equities" in the employment discrimination area suggests that backpay relief under § 1981 should be limited to the effective date of Title VII, and this Court believes that the same rule should govern an award of retroactive seniority. Any ·other conclusion would be particularly unfortunate in this case since two essentially identical plaintiff classes would then be eligible for different measures of relief after having suffered from the same discriminatory practices.

## II. *Backpay*

■ Much of what has already been said about retroactive seniority applies to backpay as well.[11] The standard for general availability is identical in both contexts; indeed, that standard was first adopted by the Supreme Court in a backpay decision. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1974). The standard for determining the eligibility for backpay of individual "applicant" class members is also the same as that employed in the retroactive seniority context.[12] *See, e. g., Hill v. Western Electric Co.*, 596 F.2d 99 (4th Cir. 1979); *Mitchell v. Mid-Continent Spring Co.*, 583 F.2d 275 (6th Cir. 1977); *Chewning v. Schlesinger*, 471 F.Supp. 767 (D.C.D.C.1979). The questions which require extended separate discussion are whether nonapplicants are eligible for backpay relief, the effect of the statute of limitations, the composition of a backpay award, and the availability of front pay. The Court notes before addressing those questions, however, that since defendant

has pointed to no reason for denying backpay relief which, "if applied generally, would not frustrate" the purposes of the employment discrimination laws,[13] a backpay award is, as a general matter, appropriate here.[14]

Although the Supreme Court opinion in *Teamsters v. United States, supra*, was not concerned with backpay, courts confronted with the question since *Teamsters* have held that "nonapplicants" are potentially eligible for a backpay award, and have applied *Teamsters* eligibility standards to the backpay area. *See, e. g., Hill v. Western Electric Co., supra; Mitchell v. Mid-Continent Springs Co., supra; Carter v. Shop-Rite Foods, Inc., supra; Chewning v. Schlesinger, supra*. This approach seems consistent with the parallel treatment generally accorded the two remedies by both the Supreme Court and the lower federal courts. *Compare Teamsters v. United States, supra*, with *Albemarle Paper Co. v. Moody, supra*. Moreover, the *Teamsters* Court's concern that imposing an absolute bar on relief to nonapplicants would "put beyond the reach of equity the most invidious effects of employment discrimination" is equally applicable here. *Teamsters v. United States*, 431 U.S. at pp. 365, 367, 97 S.Ct. at p. 1871. That language at least suggests that limiting the type of relief available to a victim of discrimination because he is a nonapplicant would be inconsistent with the duty of the courts to secure "complete justice" and provide a "make whole" remedy for such victims. *Id.* at 364, 97 S.Ct. 1843. The Court thus concludes that backpay relief is

---

**11.** This is true for the backpay claims under both Title VII and § 1981, which will be treated together here except for the statute of limitations discussion. The backpay remedy is available under § 1981. *Williams v. DeKalb County, supra*.

**12.** The discussion in the retroactive seniority section of this opinion of the union's evidentiary burden, the construction of the term "application", the maximum date and the evidence to be considered by the magistrate, is all equally applicable here.

**13.** The Court notes too that the kind of factors which led the Supreme Court to reject a back-

pay award in *City of Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) are simply not present here.

**14.** This conclusion is not foreclosed by the fact that the defendant is a union, and that a backpay award may have serious financial consequences. *E. E. O. C. v. Enterprise Association Steamfitters Local # 638*, 542 F.2d 579, 585–586 (2d Cir. 1976). The Court defers until after the magistrate submits his report, however, the question of the weight to be given to those considerations. *Id.* at 586 & 592.

available to nonapplicants, and that the standards set out in *Teamsters v. United States, supra,* and described above are to be used in making individual eligibility determinations.[15]

Unlike an award of retroactive seniority which is subject only to the maximum recovery date of July 2, 1965, backpay awards are also subject to a statute of limitations. Title VII specifically provides that "[b]ack pay liability shall not accrue from a date more than two years prior to the filing of a charge with" the E.E.O.C. 42 U.S.C. § 2000e–5(g).[16] Thus, the Anderson plaintiffs' backpay award is actually subject to a maximum recovery date of November 24, 1973, which is two years before their charge naming Local 3 was filed with the Commission.[17] The Ingram plaintiffs, whose backpay recovery is based on § 1981 rather than Title VII,[18] are subject to the applicable state limitations period, *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1974), which in New York is three years prior to the time the lawsuit was commenced. *See Cates v. Trans-World Airlines, Inc.,* 561 F.2d 1064, 1067 n.4 (2d Cir. 1977). The maximum recovery date for the Ingram plaintiffs is thus May 20, 1974, three years before their complaint in this action was amended to include Local 3 as a defendant.

 In calculating the amount appropriate for individual backpay awards, the magistrate should take into account, in addition to wages, fringe benefits such as insurance, pension benefits and vacation and sick pay, as well as overtime pay and shift differentials. *See, e. g., Pettway v. American Cast Iron Pipe Co., supra; Farmer v. United Catering,* 19 EPD ¶ 9,075 (E.D. Mich.1978) (including such items in a backpay award against a union). From this amount must be deducted the amount earned as a cleaner between the time of the individual class member's recovery date and the backpay termination date. 42 U.S.C. § 2000e–5(g). The backpay termination date in this Circuit is the date of the "actual remedying of the discrimination", *i. e.,* the date on which the class member involved becomes a laborer. *E. E. O. C. v. Enterprise Association of Steamfitters,* 542 F.2d at 590 (mandating such a cutoff date for a backpay award against a union). This approach, which has been referred to as a "front pay" award in other circuits, *see, e. g., United States v. Leeway Motor Freight, supra; White v. Carolina Paperboard Corp.,* 564 F.2d 1073, 1091 (4th Cir. 1977) (backpay to be continued until class members attain rightful place), is particularly appropriate here since the Garden's seasonal hiring practices suggest that it may be some time before all qualifying class members actually become laborers. *See, e. g., Ivey v. Western Electric Co.,* 16 EPD ¶ 8,299 (N.D.Ga. 1978). If, as is likely, front pay awards are to be made to some class members, the magistrate may either recommend a procedure by which the Court will retain jurisdiction until all qualified class members have

---

**15.** In *E. E. O. C. v. Enterprise Association Steamfitters Local # 638,* 542 F.2d 579 (2d Cir. 1976), a pre-*Teamsters* decision, the Second Circuit held that backpay relief is not available to nonapplicants. Explicitly distinguishing between an award of retroactive seniority to nonapplicants and an award of backpay, the Court focused on the economic burden to the defendant and the far greater number of potential claimants since backpay relief is not limited to those who are still employed by the parties involved. *Id.* at 588. *See also, E. E. O. C. v. Local 28 of the Sheet Metal Workers' International Association,* 532 F.2d 821, 832 (2d Cir. 1976). Although such factors may be relevant when determining whether a court, in its discretion, should award backpay relief, they cannot in light of *Teamsters* support a *per se* prohibition of such relief to nonapplicants. In

any case, the number of class members claiming backpay in the case now before the Court (43) is only slightly greater than the number who seek retroactive seniority (37).

**16.** This two year limitation period, adopted as part of the 1972 amendments to Title VII, applies to all charges pending before the E.E.O.C. on March 24, 1972 and all charges filed thereafter.

**17.** The Anderson plaintiffs' backpay relief is granted under Title VII, which, under these circumstances, provides them with an earlier maximum recovery date than § 1981. *See* discussion, *infra.*

**18.** *See* note 3, *supra.*

attained their rightful place in order to make periodic front pay adjustments, *see Ivey v. Western Electric, supra,* or supplement the backpay award by an amount equal to the estimated present value of lost earnings that are reasonably likely to occur between the final decree and the time when the class member involved can assume a laborer's position. *White v. Carolina Paperboard,* 564 F.2d at p. 1091. *See also, United States v. Leeway Motor Freight, supra; James v. Stockham Valves & Fittings Co., supra.*

▮ Once the above described calculations have been completed, the magistrate may award interest to qualified class members for *past* earnings lost as a result of the discrimination. *See, e. g., Pettway v. American Cast Iron Pipe Co., supra; Kinsey v. Leg Mason Wood Walker, Inc.,* 16 EPD ¶ 8,168 (D.C.D.C.1978), *affirmed,* 196 U.S. App.D.C. 56, 605 F.2d 572 (D.C. Cir. 1979).

▮ Finally, the Court notes that since the consent decree entered into between plaintiffs and the Garden and Allied defendants provides for a monetary award, Local 3 will not be held accountable for the total backpay figure resulting from the backpay calculations discussed above. Whether the amount provided for in the consent decree will be subtracted from the total backpay figure, with the union liable for the remainder, *Farmer v. United Catering, supra,* or whether the union will be held liable for a portion of the total figure, with the remainder attributed to the consent decree, *Myers v. Gilman Paper Co.,* 544 F.2d 837 (5th Cir. 1977); *Stevenson v. International Paper Co.,* 432 F.Supp. 340, 14 EPD ¶ 7,615 (W.D.La.1977), will be determined by the Court after the magistrate submits his report. *But see, United States v. East Texas Motor Freight System, Inc.,* 564 F.2d 179 (5th Cir. 1977) (upholding a district court's denial of a backpay award against a union on the ground that plaintiffs were "fully compensated" by the monetary award contained in a consent decree between plaintiffs and their employer). The magistrate's report should include a recommendation for the total backpay figure, as well as for the amounts owing individual class members.

### III. *Prospective Relief*

▮ The prospective relief sought here poses none of the complicated and sensitive questions which confront a court asked to establish hiring goals or quotas.[19] *See, e. g., Rios v. Enterprise Association Steamfitters Local # 638,* 501 F.2d 622 (2d Cir. 1974). Once a violation of either Title VII or § 1981 is established, regularization of employment or referral practices to remedy the vestiges of past discrimination is well within the broad equity power of the trial court. 42 U.S.C. § 2000e–5(g). *See United States v. Wood, Wire & Metal Lathers International Union,* 471 F.2d 408 (2d Cir. 1973) ("the only limitation on the broad powers of affirmative relief is that restricting preferential quota hiring"); *Stamps v. Detroit Edison Co.,* 17 EPD ¶ 8,583 (E.D. Mich.1978) (ordering defendants to notify class members of their rights under a remedial order by mail). Accordingly, plaintiffs' request that Local 3 be ordered to maintain a referral "register" and to post notices in the Garden of how to apply for a referral is granted. Defendant is ordered to submit to the magistrate for his approval a plan for the establishment of referral lists and copies of the proposed notices to be posted in the Garden.

Finally, plaintiffs' request that class members be referred to the Garden in order of their "current seniority" is granted only until such time as retroactive seniority dates have been established. After that time, and after the five class members named in the consent decree have obtained laborers positions, Local 3 is ordered to refer class members to the Garden under the terms of the consent decree in the following order: first, applicants or qualified nonapplicants who now seek a laborer's position

---

**19.** Minority hiring goals are included in the consent decree entered into between plaintiffs and the Garden and Allied defendants.

in order of their retroactive seniority date, i. e., those with the earliest retroactive seniority date should be referred first; second, once this first group of class members has been placed, the remaining class members should be referred in the order that they seek a referral. Where more than one class member in this second group applies for a referral at the same time, they should then be referred in order of their current seniority as cleaners. In the Court's view, this approach recreates the conditions that would have existed but for the discrimination more accurately than would the approach suggested by plaintiffs.

## IV. *Attorneys' Fees & Costs*

 Reasonable attorney's fees and costs may be allowed the prevailing party in employment discrimination suits under either Title VII or § 1981. *See* 42 U.S.C. § 2000e–5(k) and 42 U.S.C. § 1988. The standard for determining the amount of such fees is the same under both statutes, and although a fee award is committed to the discretion of the trial court, prevailing plaintiffs in civil rights actions generally recover fees and costs absent special circumstances which would make such an award unjust. *See Christianburg Garment Co. v. E. E. O. C.*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34, 37 (2d Cir. 1978). In this case, defendant's liability has been established and a judgment will ultimately be entered which will both change Local 3's referral practices and provide individual relief for members of the plaintiff classes. There is thus no doubt that plaintiffs' claims were meritorious and that plaintiffs are the "prevailing party" entitled under the appropriate statutes to recover reasonable attorneys' fees. 42 U.S.C. § 2000e–5(k) and 42 U.S.C. § 1988.

Since Allied and the Garden were initially parties to this litigation, it will be necessary to determine what portion of plaintiffs' fees and costs are chargeable to Local 3. Currently pending before this Court for its approval is an application for a fee award, contained in the consent decree, in connection with legal services performed by plaintiffs' attorney until the time of settlement with Allied and the Garden. In a forthcoming opinion, the Court will determine a reasonable fee award for all such services. However, it is clear that since the three defendants were, until settlement, part of the same consolidated action, these legal services were performed in connection with plaintiffs' claims against all defendants. The Court thus finds that Local 3 shall be liable for one-third of plaintiffs' legal costs incurred from the commencement of this action until the time of settlement, exclusive of any costs incurred by plaintiffs in settlement negotiations to which Local 3 was not a party. *See Rogers v. International Paper Co.*, 510 F.2d 1340, modified on other grounds, 526 F.2d 722 (8th Cir. 1975); *Sagers v. Yellow Freight Systems, Inc.*, 529 F.2d 721 (5th Cir. 1976); *Bush v. Lone Star Steel Co.*, 373 F.Supp. 526 (E.D.Tex.1974). The additional fees incurred as a result of the trial in which only Local 3 was involved, as well as all fees incurred during the remedial phase of this litigation, must necessarily be borne by Local 3 alone.

 The standards for computing a reasonable fee award have been set out in this Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). After a "lodestar" figure has been calculated, the magistrate may consider additional subjective factors in increasing or decreasing the amount of the fee. *City of Detroit*, 495 F.2d at 471. Moreover, in an appropriate case, the not-for-profit character of the defendant against whom an award is granted may be considered in adjusting the fee. *See Rios v. Enterprise Association Steamfitters Local 638*, 400 F.Supp. 993, (S.D.N.Y. 1975), *aff'd sub nom. E. E. O. C. v. Enterprise Association Steamfitters Local 638*, 542 F.2d 579 (2d Cir. 1976), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977). The Court notes, however, that any deviation in amount from the "lodestar" fee award figure in recognition of such factors must be supported by specific factual findings indicating the basis for the deviation. *City of Detroit*, 495 F.2d at 471.

To arrive at a fee award which is reasonable under all the circumstances, the magistrate must be presented with time logs or affidavits detailing the number of hours spent and identifying the attorneys and activities involved. Distinctions between time spent in court and time attributed to research, administrative and related services may be appropriate in fixing a reasonable hourly rate. *See Firebird Society v. Members of the Board of Fire Commissioners,* 556 F.2d 642 (2d Cir. 1977). Care should be taken to avoid awarding fees for duplicated services and unnecessary expenditures of time. *See Gagne v. Maher,* 594 F.2d 336 (2d Cir. 1979); *Reynolds v. Coomey,* 567 F.2d 1166 (1st Cir. 1978). If the time logs and other supporting documents are sufficiently detailed, they may provide an appropriate basis for determination of a reasonable fee. *Rios,* 400 F.Supp. at 996. If there are disputes of fact over the elements that comprise the fee award, however, or if there are "factual voids" in the information presented, an evidentiary hearing is "imperative" before an adequate fee can be fairly determined. *City of Detroit,* 495 F.2d at 473.

## V. *Conclusion*

The case is now referred to the magistrate for further proceedings consistent with the guidelines set forth herein. During the course of those proceedings, issues not dealt with in this opinion will undoubtedly arise. The Court does not in any way intend to preclude consideration of such issues by the magistrate who, of course, will have full authority to make recommendations with respect to those issues in light of this opinion.