WILLIAMSBURG FAIR HOUSING
COMMITTEE, et al., Plaintiffs,

v.

ROSS–RODNEY HOUSING CORP. and
Kraus Management, Inc., Defendants.

UNITED JEWISH ORGANIZATIONS
OF WILLIAMSBURG, INC., et al.,
Third-Party Plaintiffs,

v.

KENT VILLAGE HOUSING CO., INC.,
et al., Third-Party Defendants.

No. 76 Civ. 2125 (CHT).

United States District Court,
S.D. New York.

Oct. 26, 1984.

Puerto Rican Legal Defense and Education Fund, Inc., Community Action for Legal Services, Inc., and Teitelbaum & Hiller, P.C., New York City, for plaintiffs; Cesar A. Perales, Hector W. Soto, Kenneth Kimerling; Dale Johnson; Herbert Teitelbaum, Peter Paden, New York City, of counsel.

Paskus, Gordon & Hyman, New York City, for Ross-Rodney Housing Corp. and Kraus Management, Inc.; Philip H. Schaeffer, Craig R. Michel, New York City, of counsel.

## OPINION

TENNEY, District Judge.

Pending before this Court is plaintiffs' motion for attorneys' fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1982) ("§ 1988"). The underlying case is a class action [1] that challenged the constitutionality of certain rental practices in five housing developments in the Williamsburg area of Brooklyn, New York. The suit resulted in a Consent Decree, developed by the parties in conjunction with various community groups, which provided a comprehensive plan for preventing and remedying the civil rights violations found by this Court.

The defendants in the instant motion are Kraus Management, Inc. and Ross-Rodney Housing Corp., the manager and owner, respectively, of the Bedford Gardens housing development ("Bedford Gardens defendants"). Plaintiffs request payment of attorneys' fees for services rendered by five attorneys over a period of four-and-a-half years, 1976 to 1981, totalling 2,758.50 hours. The attorneys for plaintiffs are the Puerto Rican Legal Defense and Education Fund, Community Action for Legal Services, and Teitelbaum & Hiller, P.C.

Plaintiffs seek a total award of $465,-126.33. They request that the award be based on hourly rates ranging from $50 to $125, and that a multiplier of 2.5 be employed. Plaintiffs also seek compensation for the time spent on this application for attorneys' fees, as well as costs and disbursements.

Based on the reasoning set forth below, the Bedford Gardens defendants are ordered to pay a total of $216,880.70. This award has several components. First, the fees incurred from 1976 to 1981 were deter-

---

**1.** The plaintiff class was defined as non-white individuals who had been or were eligible for low and middle income public housing and federal government subsidies and who were denied apartments or subsidies in any of the relevant housing developments as a result of the discriminatory rental practices of the several named defendants. *See* Order filed February 14, 1978, 76 Civ. 2125 (CHT).

mined by multiplying a reasonable hourly rate by the number of hours reasonably expended in litigation against the Bedford Gardens defendants, which produced a basic fee of $137,507.50. Next, that amount was increased by a multiplier of 1.25 because of the contingent nature of the case; the adjusted figure is $171,884.37. Finally, the compensation awarded for the time spent on this application for attorneys' fees, $37,732.50, was added to that figure, together with $7,263.83 for out-of-pocket costs, resulting in a total award of $216,-880.70. In addition, interest is to be paid on that sum, calculated from August 23, 1983, the date that this Court entered judgment granting plaintiffs' request for attorneys' fees.

## BACKGROUND

In 1976 the plaintiffs sued New York City Housing Authority ("NYCHA") and its chairman who were responsible for four housing developments in the Williamsburg area. Plaintiffs subsequently added the Bedford Gardens defendants.[2] After the case was commenced, the United Jewish Organization of Williamsburg ("UJO") intervened as a defendant, together with individuals seeking to protect the interests of all white families that had existing leases at Bedford Gardens. The UJO and one individual also began a third-party action against the owner and manager of a sixth housing development in the area, the Roberto Clemente Plaza ("Clemente") and against certain federal and local authorities involved in Clemente's operation.

The testimony and evidence in the case showed that rental quotas based on race and ethnic origin had been developed and instituted at each of the housing developments named in the suit. The Bedford Gardens defendants maintained a quota of 75% white families, 20% hispanic and 5% black families. Clemente's quota was the opposite of the quota at Bedford Gardens. At Clemente 75% of the apartments were to be rented to non-white families and 25% to white families. The plaintiffs in the original action sought to protect the existing leases of non-white families at Clemente and therefore actively participated in the third-party action concerning Clemente. In 1978, all parties, except the Bedford Gardens defendants, subscribed to a Consent Decree.

Shortly before the Consent Decree was approved, the plaintiffs settled with NYCHA and its chairman and two of the third-party defendants. In that settlement, plaintiffs received attorneys' fees of $59,-687.00 together with costs of $7,527.26.

The plaintiffs' claims were strenuously contested by the Bedford Gardens defendants, who refused to negotiate with the other parties and would not accept the terms of the Consent Decree. After a hearing and a careful review of the evidence, the Court issued an injunction ordering the Bedford Gardens defendants to act pursuant to the terms of the Consent Decree. 493 F.Supp. 1225 (S.D.N.Y.1980). The Bedford Gardens defendants appealed that injunction; the court of appeals held that the injunction would remain in effect unless the defendants agreed to subscribe to the Consent Decree. Summary Order, No. 80–6161 (2d Cir. Jan. 22, 1981). In January 1981, the Bedford Gardens defendants finally subscribed to the Decree and the litigation was thus resolved.

## DISCUSSION

■ Plaintiffs now move against the Bedford Gardens defendants for payment of their attorneys' fees pursuant to § 1988 which provides that federal courts may award attorneys' fees to prevailing parties in civil rights cases.[3] Although the Bed-

---

**2.** The evolution of the litigation from which this motion arises has been set forth in detail in the previous decisions of this Court. *See* 493 F.Supp. 1225, 1227–29 (S.D.N.Y.1980); 450 F.Supp. 602, 603–05 (S.D.N.Y.1978).

**3.** Section 1988 provides in relevant part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

ford Gardens defendants concede that the plaintiffs are entitled to attorneys' fees as the prevailing party under § 1988,[4] they object to the number of hours claimed, the hourly rates requested and the proposed upward adjustment. The Bedford Gardens defendants argue that they should not bear sole responsibility for the fees incurred; they contend that responsibility should be allocated among all defendants and third-party defendants and, further, that no attorneys' fees should be awarded for the time spent on the 1980 appeal. In sum, although the Bedford Gardens defendants concede that an award of attorneys' fees is warranted, they disagree with the plaintiffs concerning the appropriate amount of the award; the plaintiffs contend that the Court should award more than $450,000.00, while the defendants contend that the award should be less than $20,000.00.

*The Lodestar Figure*

■ Because plaintiffs are the prevailing parties under § 1988, they are entitled to an award of reasonable attorneys' fees. The legislative history indicates that reasonable fees are those "which are adequate to attract competent counsel, but which do not produce windfalls to attorneys." S.Rep. No. 1011, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908, 5913 ("Senate Report"). Such fees are normally based on the number of hours that counsel reasonably expended on the case, multiplied by a reasonable hourly rate. *Blum v. Stenson,* — U.S. —, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The

resulting amount is commonly known as the "lodestar" figure. *See City of Detroit v. Grinnell Corp.,* 560 F.2d 1093, 1098 (2d Cir.1977).

Because there were multiple parties in the underlying action, it is necessary for the Court to address the question of the proper allocation of responsibility for fees incurred by plaintiffs. After addressing this issue, the Court will consider what constitutes a reasonable hourly rate in the instant matter, and whether the number of hours claimed by plaintiffs' attorneys is reasonable.

A) *Allocating Responsibility for Attorneys' Fees*

Plaintiffs seek attorneys' fees for services rendered from 1976 to 1981, amounting to 2,780.50 hours. From 1978 to 1981, the Bedford Gardens defendants were the only defendants involved in the litigation, since all the other parties had subscribed to the Consent Decree in 1978. As the sole defendants, the Bedford Gardens defendants are responsible for all attorneys' fees arising out of the litigation after 1978.

From 1976 to 1978, however, there were numerous parties involved in the litigation. Nevertheless, plaintiffs argue that the Bedford Gardens defendants were the "primary defendants," and therefore should pay the entire 1976–1978 lodestar figure requested, amounting to $153,987.50, or at least pay the "lion's share." The Court finds that this argument is not persuasive and that an equitable apportionment of the responsibility for the 1976–1978 fees is necessary. The Court has made a careful and

---

**4.** Plaintiffs' success was substantial and they are, therefore, clearly prevailing parties under § 1988. *See Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1938, 76 L.Ed.2d 40 (1983). A formal judgment is not required for a party to prevail; it is the substance, not the form, of the final remedy that must be examined. Eliminating racial and ethnic disparities by means of a consent decree suffices. *See Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980).

This Court found that the Bedford Gardens defendants had violated the plaintiffs' civil rights by establishing a rigid and pervasive racial and ethnic quota which was used as a basis for renting apartments at Bedford Gardens and by giving whites preferential treatment. 493 F.Supp. 1225, 1251 (S.D.N.Y.1980). The court of appeals affirmed this Court's finding that the Bedford Gardens defendants had violated the plaintiffs' civil rights, and held that the permanent injunction ordering compliance with the Decree would continue in full force and effect against the Bedford Gardens defendants unless they subscribed to the Consent Decree within a reasonable time. Summary Order, No. 80–6161 (2d Cir. Jan. 22, 1981).

lengthy examination of the record in this case, and after much deliberation finds that the Bedford Gardens defendants should pay 40% of the attorneys' fees incurred from 1976 to 1978.

■ Where there are multiple defendants, each defendant must bear the prevailing plaintiff's fees for time spent on matters clearly related to the claims made against that defendant. *See Arkansas Community Org. v. Arkansas State Bd.,* 468 F.Supp. 1254, 1258–59 (E.D.Ark.1979); *accord Ingram v. Madison Square Garden Center, Inc.,* 482 F.Supp. 918, 928 (S.D.N.Y.1979).

In the instant case, the legal and factual issues raised by the plaintiffs' claims against the various defendants and third-party defendants were so interrelated that it is impossible to isolate the number of hours spent litigating against any one party. Thus, much of the time expended by the plaintiffs' attorneys on claims relating to the parties other than the Bedford Gardens defendants had a direct impact on the claims made against the Bedford Gardens defendants. The 1976 hearings concerning the rental policies at Clemente, for example, produced evidence concerning the rental practices throughout the Williamsburg community, as well as evidence showing that the quotas developed at Clemente had been developed to counterbalance the quotas developed at Bedford Gardens. In addition, the Consent Decree, which provided the ultimate remedy in the plaintiffs' suit against the Bedford Gardens defendants, would not have been developed without the long, intense negotiations undertaken by the plaintiffs' attorneys with the other parties.

Because the issues were so interrelated, plaintiffs suggest that responsibility for attorneys' fees be allocated based on "the principal purpose of the suit and the primary and controlling matter in dispute." *See* Plaintiffs' Reply Memo. at 8. The Court agrees that an examination of the basic issues involved in the litigation is the best procedure.

The Bedford Gardens defendants contend that there were two fundamental disputes—one involving the Bedford Gardens housing development and the other involving the Clemente apartments. *See* Defendants' Supplemental Memo In Opposition at 12. Analyzing the case in this manner would result in holding the Bedford Gardens defendants responsible for one-half of the plaintiffs' attorneys' fees.

Such allocation, however, would ignore the claims made against NYCHA concerning the four other housing developments in the area. In light of such claims, the case could be characterized as involving three, rather than two, primary disputes. Without more, such characterization would lead to holding the Bedford Gardens defendants liable for only one-third of the fees incurred.

Based on a review of the record, however, the Court finds that the Bedford Gardens defendants should bear responsibility for 40% of the fees incurred, rather than one-half or one-third. Because of the claims made against NYCHA, it would be inequitable to require that the Bedford Gardens defendants pay 50% of the fees involved. It would also be inequitable to divide responsibility in three equal parts since the claims made concerning Bedford Gardens and Clemente were more time-consuming and, in some ways, more central to the principal purpose of the litigation than were the claims made against NYCHA.

More specifically, requiring that the Bedford Gardens defendants pay 40% of the fees incurred is equitable in light of the role they played during the litigation and their conduct with respect to settlement. First, although there were six housing developments involved, only Bedford Gardens and Clemente were not fully occupied when the suit was commenced. Because of this, the claims concerning Bedford Gardens and Clemente presented issues that were of particular importance to the plaintiffs' actual goal of remedying the discriminatory rental practices at the named housing developments. The plaintiffs concentrated much of their litigation efforts on these

two housing developments because they were not fully tenanted. Second, while all other parties were striving to end the litigation by means of negotiation and compromise, the Bedford Gardens defendants staunchly resisted any settlement. They refused to participate in discussions pertaining to the Consent Decree, they proposed an alternative consent decree which was unacceptable to the other parties, and they opposed court approval of the Consent Decree even so far as it affected the parties who had agreed to the Decree. This opposition on the part of the Bedford Gardens defendants added to the complexity of the case and increased the number of hours required to end the litigation. The Court thus finds that the Bedford Gardens defendants should pay 40% of the attorneys' fees incurred from 1976 to 1978, and all fees incurred after 1978.

### B) *Reasonable Hourly Rates*

■ The plaintiffs' request for attorneys' fees should be considered in light of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). *See Blum,* 104 S.Ct. at 1546–57 (citing Senate Report at 5913 adopting the *Johnson* factor); *Hensley,* 103 S.Ct. at 1937–38. Factors which must be considered include counsels' skill, background and reputation, the nature and result of the litigation, and the hourly rate ordinarily charged by attorneys of similar ability and experience in the same locale.

In the case at bar, plaintiffs' attorneys invested time on this litigation from 1976 to 1981 and now request compensation at hourly rates ranging from $50 to $125 as set forth in the following chart:

| | Period | No. of Hours | Hourly Rate | Subtotal | Total |
|---|---|---|---|---|---|
| H. Teitelbaum (1968 graduate) | 1976–77 | 416.50 | $125 | | $ 52,062.50 |
| P. Bienstock (1973 graduate) | 1976–77 | 812.50 | 75 | $60,937.50 | |
| | 1978–79 | 437.75 | 100 | 43,775.00 | 104,712.50 |
| I. Bezoza (1972 graduate) | 1976–77 | 546.50 | 75 | 40,987.50 | |
| | 1978–81 | 72.50 | 100 | 7,250.00 | 48,237.50 |
| H. Soto (1977 graduate) | 1980 | 50.00 | 75 | | 3,750.00 |
| H. Fernandez (1977 graduate) | 1978 | 422.75 | 50 | | 21,137.50 |
| | | | | | $229,900.00 |

Defendants argue that the fees requested are so high that, contrary to legislative intent, they provide a windfall for plaintiffs' attorneys. *See* Senate Report at 5913. Defendants therefore request a general reduction of 40% of all hourly rates proposed by plaintiffs. *See* Affidavit in Opposition, of Philip H. Schaeffer, sworn to February 8, 1982 ("Schaeffer Aff."), at 22.

■ Defendants' argument must fail to the extent that it is based on the concept that attorneys working for publicly subsidized, non-profit law firms should be paid only moderate fees rather than the prevailing market rate. *Id.* This argument was specifically rejected by the Supreme Court in its recent decision, *Blum v. Stenson,* 104 S.Ct. at 1547 ("The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel.").

Furthermore, the defendants' argument that the requested fees are otherwise excessive must also be rejected. The fees requested are reasonable in light of the experience, background and competence of

the plaintiffs' attorneys and their expertise in the area of civil rights litigation.[5] *See* resumes filed with plaintiffs' Notice of Motion, dated November 30, 1981, Exhs. D–H. The quality of representation was high, the case was complex both legally and factually, and the results achieved were commendable.

 An examination of awards made in comparable cases[6] shows that the fees requested here are in accord with the prevailing market rates for the relevant period of time.[7] *See, e.g., Population Service Int'l v. Carey,* 476 F.Supp. 4, 10 (S.D.N.Y. 1979) ($60 to $120 per hour based on 1975 market rates); *Kane v. Martin Paint Stores, Inc.,* 439 F.Supp. 1054, 1056–57 (S.D.N.Y.1977) ($65 to $100 per hour), *aff'd mem.,* 578 F.2d 1368 (2d Cir.1978); *Frankenstein v. McCrory Corp.,* 425 F.Supp. 762, 766 (S.D.N.Y.1977) ($75 to $140 per hour); *Burger v. CPC Int'l, Inc.,* 76 F.R.D. 183, 189 (S.D.N.Y.1977) ($125 per hour). The hourly rates charged by the attorneys for the Bedford Gardens defendants also support a finding that the fees requested herein are reasonable. The Bedford Gardens defendants paid their attorneys hourly fees that ranged up to $175. *See* New York City Comptroller's report at 35, Attachment B to Affidavit of Kenneth Kimerling, sworn to July 20, 1983 ("Kimerling Aff.").

 The Court finds that the hourly rates requested by the plaintiffs are fair and reasonable.

## C) *Number of Hours Reasonably Expended*

Plaintiffs' attorneys seek compensation for 2,758.50 hours expended on the underlying litigation. *See* Affidavit of Hector W. Soto, sworn to November 30, 1981 ("Soto Aff."), ¶ 5.

The defendants argue, first, that the number of hours claimed is excessive, and second, that the time charges submitted are unconfirmable, uncorroborated and inconsistent, and should be reduced accordingly. Based on the documentation and affidavits submitted in this case, however, the Court is convinced that the hours claimed are reasonable, were necessary for litigating this matter, and were indeed spent in the manner indicated.

First, the Court finds that the number of hours claimed is proportionate to the magnitude and complexity of this action. The case entailed four-and-a-half years of litigation and involved complex legal and factual issues. There is no evidence that the case was not litigated in a forthright and efficient manner. The Bedford Gardens defendants vehemently resisted the plaintiffs' efforts to reach a harmonious settlement, thereby increasing the number of hours needed to resolve the litigation. As already recited, plaintiffs' attorneys engaged in extensive negotiations which resulted in a plan for remedying the existing discriminatory rental practices and mechanisms for ensuring continued compliance with that plan.

Second, the Court is satisfied that the plaintiffs' attorneys accurately recorded

---

**5.** The defendants argue that the $125 per hour rate requested by Herbert Teitelbaum ("Teitelbaum") is too high in light of prior fees granted to him. *See Vulcan Soc'y v. Fire Dep't of White Plains,* 533 F.Supp. 1054, 1059 (S.D.N.Y.1982) (awarding Teitelbaum $110 per hour); *Torres v. Sachs,* 69 F.R.D. 343, 346 (S.D.N.Y.1975) (awarding him $75 per hour). In the instant case, $125 per hour is a reasonable fee in light of the complexity of the case and Teitelbaum's background in this area of litigation. That rate is also reasonable in relation to the other fees awarded in this case and in light of the recent case, *Blum v. Stenson,* 104 S.Ct. 1541, in which the Supreme Court approved an hourly rate of $105 for an attorney with only three years' expe-

rience. *Id.* at 1544 n. 4. Teitelbaum had seven to eight years of experience at the time of this suit.

**6.** The reasonableness of an hourly rate may be determined by examining awards made in comparable cases. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 719 (5th Cir.1974).

**7.** Awards made in this circuit must be based on the hourly rates which prevailed at the time of the litigation, rather than the rates prevailing when the award is made. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1152–53 (2d Cir.1983).

their hours and submitted their claims in good faith. Their records are specific enough to support the hours claimed. There is no reason to believe that the affidavits submitted supporting the attorneys' documentation of hours were not truthful. Reports providing minute-by-minute details or a lengthy evaluation of an attorney's day are not required. Records that clearly indicate the amount of time spent and the subject matter involved, such as those provided in this case, are all that are necessary to support an award of fees. *See Hensley,* 103 S.Ct. at 1939 n. 12; *accord Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 116–17 (3d Cir.1976) (en banc).

The Bedford Gardens defendants make three other arguments in favor of reducing the number of compensable hours. These arguments are treated below.

### 1. *Lack of Contemporaneous Time Records*

Defendants contend that there should be no award for any hours claimed which are not supported by contemporaneous time records. This argument pertains to hours claimed by Hector Soto and Ira Bezoza, who have no contemporaneous records for the work they did on this case from 1978 to 1981. Both have reconstructed their hours and submitted affidavits attesting to the number of hours claimed. *See* Soto Aff. ¶ 4, Exhs. B–C. The defendants argue that the hours submitted by these attorneys "should simply be excised from the claim." Schaeffer Aff. at 20. The Court will not, however, adopt the defendants' reasoning.

Although contemporaneous records are obviously the most accurate method of computing time spent on a case, such records, per se, were not mandated in this circuit until after 1983. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir.1983) [hereinafter cited as *Willowbrook*]. Recognizing that it would be unfair to require contemporaneous time records on a retroactive basis, the court of appeals held that such records would be a prerequisite for recovery of attorneys' fees only for time expended after June 25, 1983. *Id.* at 1147. No automatic reduction in hours, therefore, is required in the case at bar. *See Birmingham v. Sogen-Swiss Int'l Corp. Retirement Plan,* 718 F.2d 515, 523–24 (2d Cir.1983); *accord Lindy Bros.,* 540 F.2d at 109 (" 'Although mere estimates of time are not acceptable, an allowance of attorneys' fees may be based on a reconstruction, provided that the time records are substantially reconstructed and are reasonably accurate.' " *Id.* (quoting *Lindy Bros.,* 382 F.Supp. 999, 1011 (E.D.Pa. 1974))).

The Court is convinced that both attorneys reconstructed their hours in a reasonable and accurate manner. Mr. Bezoza submitted an affidavit stating that in order to reconstruct his hours he reviewed the case files and pleadings, consulted with co-counsel concerning his participation at meetings, depositions and court hearings, and examined his co-counsel's time records. *See* Affidavit of Ira S. Bezoza, sworn to August 8, 1983, ¶ 9. Moreover, he examined briefs and memos to determine the time he spent researching and writing, and looked at specific events which took place, such as oral argument of the appeal, and the pre-argument conference. He also evaluated the amount of time he spent reviewing the record on appeal, which consisted of almost 3000 pages. *See* Affidavit of Ira S. Bezoza, sworn to October 6, 1981, ¶¶ 4–9, Exh. B to Soto Aff.

Mr. Soto also submitted an affidavit setting forth the hours he devoted to this case and the steps he took to reconstruct his time. His reconstruction was based on the amount of research he had done, the work he had produced and his work habits, together with his recollection of the amount of time that he had invested in the case. The request for compensation for 50 hours of his time appears reasonable, particularly in light of his statement that he believes he actually spent a total of 69 to 115 hours on the case. See Affidavit of Hector W. Soto, sworn to November 30, 1981, ¶¶ 5–7, Exh. C to Soto Aff.

After examining the affidavits submitted, the Court is satisfied that the reconstructions were done carefully and accurately. The time claimed on the basis of reconstructed records is therefore compensable.

### 2. *Multiple Attorneys*

The defendants protest that the hours submitted are unreasonable because of excessive duplication of services by plaintiffs' attorneys. *See* Schaeffer Aff. at 19. They argue that it was unreasonable for two or three attorneys to simultaneously represent the plaintiffs at activities such as depositions, meetings or hearings. While the defendants characterize the representation by multiple attorneys as being "wasted effort," *id.*, they have failed to show that such representation was not in fact reasonable.

If two or more attorneys have duplicated each other's work, then the number of hours submitted should be reduced, since some of the work was unnecessary and the time claimed would therefore be unreasonable. The use of multiple attorneys, however, is not unreasonable per se. *See Willowbrook,* 711 F.2d at 1146 (citing *Seigal v. Merrick,* 619 F.2d 160, 164 (2d Cir.1980)); *accord Craik v. Minnesota State Univ. Bd.,* 738 F.2d 348, 350 (8th Cir.1984) (per curiam). Indeed, division of responsibility may make it necessary for more than one attorney to attend activities such as depositions and hearings. Multiple attorneys may be essential for planning strategy, eliciting testimony or evaluating facts or law. *See Ross v. Saltmarsh,* 521 F.Supp. 753, 762 (S.D.N.Y.1981), *aff'd mem.,* 688 F.2d 816 (2d Cir.1982); *Johnson v. University College,* 706 F.2d 1205, 1208 (11th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983).

The case at bar involved numerous parties, was legally and factually complex, and was actively litigated over a long period of time. Plaintiffs make the plausible argument that when more than one attorney was present, each attorney made a distinct contribution by his presence or participation. *See* Plaintiffs' Reply Memo., at 15.

Although the defendants object to the plaintiffs' use of multiple attorneys, the defendants themselves were represented by more than one attorney at various times. *See* Plaintiffs' Reply Memo. at 16. The defendants' use of multiple attorneys may have, in itself, contributed to the plaintiffs' need for representation by more than one attorney. *See Seigal,* 619 F.2d at 164 (The court was reluctant "to deprive a lawyer of the aid of even one associate in conferences or court appearances when ... he was often confronted with a bevy of hostile lawyers for the multiple parties on the other side ....").

The Court concludes that the use of more than one attorney was justified in this case. Thus, there will be no reduction of hours for unreasonable duplication of services.

### 3. *Costs of the 1981 Appeal*

In 1980, this Court found that the Bedford Gardens defendants had violated the plaintiffs' civil rights and therefore ordered the Bedford Gardens defendants to comply with the terms of the Consent Decree. 493 F.Supp. 1225. The Bedford Gardens defendants appealed that decision without success,[8] and now argue that the plaintiffs' attorneys should not be compensated for the time spent on that appeal. *See* Schaeffer Aff. at 19. The Court disagrees.

In its summary opinion, the court of appeals ordered that each party "bear its own costs" for the appeal. Defendants interpret this language to mean that attorneys' fees should not be awarded for the time plaintiffs' attorneys spent defending the appeal. *See* Schaeffer Aff. at 19–20. The defendants' interpretation of the term "costs" is far too broad and must be rejected.

Courts have consistently distinguished between attorneys' fees and routine out-of-pocket costs. *See Gates v. Collier,* 616 F.2d 1268, 1279 n. 17 (5th Cir.1980) (citing

---

**8.** *See* supra note 4.

cases); *Northcross v. Board of Educ.*, 611 F.2d 624, 639 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). *See generally* 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶¶ 54.70[1], 54.77[2] (2d ed. 1983).

■ Title 28 U.S.C. § 1920 (1982) sets forth those items which may properly be taxed as costs by United States courts, listing items such as filing fees, court reporter fees, marshals' fees, and disbursements for printing and witnesses. Based on this statutory definition, the Supreme Court has held that "the term 'costs' does not include attorney's fees...." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 720, 87 S.Ct. 1404, 1408, 18 L.Ed.2d 475 (1967). Thus, in the case at bar, the term "costs" will be given its ordinary interpretation,[9] and the plaintiffs' attorneys will be compensated for the time spent on the appeal.

### D) *Summary of the Lodestar Analysis*

The Court finds that the hours submitted by the plaintiffs' attorneys and the hourly rates requested for services rendered are reasonable. The fees incurred are to be paid in accordance with the foregoing discussion of allocation. The Court finds that the Bedford Gardens defendants, as the sole defendants during the post-1978 period, are responsible for all attorneys' fees incurred during that period, or $75,912.50. As one of several defendants during the initial litigation, they are responsible for only 40% of the fees owed from 1976 to 1978, or $61,595.00. The resulting lodestar figure is $137,507.50.[10]

### *Upward Adjustment*

■ The plaintiffs request that the lodestar figure be increased by applying a multiplier of 2.5. In *Blum v. Stenson*, the Supreme Court stated that an upward adjustment of an award may be warranted if the lodestar figure does not provide a reasonable fee. *Id.*, 104 S.Ct. at 1548 & n. 14 (citing *Hensley*, 103 S.Ct. at 1940). In the case at bar, the Court finds that an upward adjustment is compelled by the risk of nonpayment which existed because of the contingent nature of the case. *See Blum*, 104 S.Ct. at 1550 (Brennan, J., concurring) ("[T]he risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee.")[11] This Court concludes that the lodestar figure should be increased by applying a multiplier of 1.25.

Successful enforcement of civil rights depends on the willingness of capable attorneys to accept cases based on contingent

---

**9.** There is no indication whatsoever that the court of appeals used the term "costs" in a sense broader than its customary definition. Moreover, in a civil rights case such as this, where § 1988 applies, it is doubtful that the court of appeals would deny attorneys' fees to a prevailing party in a single conclusory sentence. Although § 1988 provides that a court may deny an award of attorneys' fees based on "special circumstances," no such special circumstances exist in this situation.

**10.** It should be noted that Paskus, Gordon & Hyman, Esqs., attorneys for the Bedford Gardens defendants, billed $204,611 for services rendered in this suit from 1976 to 1980. *See* N.Y.C. Comptroller's Report at 36, Attachment B to Kimerling Aff. An additional $7,600 was paid to Kraus & Kraus, Esqs. for services rendered in this case from 1976 to 1978. *Id.* at 40.

**11.** The Supreme Court made it clear in *Blum* that factors such as the complexity of the litigation, the novelty of the issues, the results obtained and the quality of representation do not provide an independent basis for enhancing the lodestar amount. *Blum*, 104 S.Ct. at 1548–50. Such factors should instead be reflected in the hourly rate used to establish the basic lodestar figure. The majority opinion in *Blum* did not address the question of whether the contingent nature of a case may require enhancing the lodestar figure in order to adequately compensate counsel. *See id.* at 1550 n. 17.

Proceeding in light of the *Blum* decision, the 8th circuit recently granted an upward adjustment of the lodestar figure to compensate for the contingent nature of the case. *See Craik v. Minnesota State Univ. Bd.*, 738 F.2d 348 (8th Cir.1984) (per curiam); *see also Society for Good Will to Retarded Children v. Cuomo*, 103 F.R.D. 168 (E.D.N.Y.1984) (awarding a multiplier of 1.25). *But see Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C.Cir.1984) (reversing a lower court decision granting an upward adjustment).

fees. It is unlikely that skilled attorneys will accept such cases if the fees available upon prevailing are strictly limited to an hourly market rate. *See Yates v. Mobile County Personnel Bd.,* 719 F.2d 1530, 1534 (11th Cir.1983); *accord Vulcan Soc'y v. Fire Dep't of White Plains,* 533 F.Supp. 1054, 1065 (S.D.N.Y.1982); *Desimone v. Industrial Bio-Test Labs., Inc.,* 83 F.R.D. 615, 622 (S.D.N.Y.1979). The prevailing market rate is generally based on what an attorney in private practice charges his clients. That rate reflects the expectation that he will be paid for the hours he devotes to the case, regardless of whether or not his client wins. The prevailing market rate, therefore, is essentially based on an assumption of guaranteed payment. By the same token, when an attorney in private practice anticipates that he will be paid only if his client prevails, he ordinarily adjusts his rates upward to counterbalance the risk involved. Such upward adjustment "is neither less nor more appropriate in civil rights litigation than in personal injury cases. The standard of compensation must enable counsel to accept apparently just causes without awaiting sure winners." *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.) (en banc), *cert. dismissed sub nom. Ledbetter v. Jones,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981).

Fees awarded under § 1988, where payment is not guaranteed, may therefore be inappropriately low if the award is based on market rates. An upward adjustment is warranted in such cases. *See Blum,* 104 S.Ct. at 1550–51 (Brennan, J. concurring); *Craik v. Minnesota State Univ. Bd.,* 738 F.2d at 350; *accord Northcross,* 611 F.2d at 638 ("Perhaps the most significant factor in these cases which at times renders the routine hourly fee unreasonably low is the fact that the award is contingent upon success."); *Blatt v. Dean Witter Reynolds Inter-Capital, Inc.,* 566 F.Supp. 1294, 1298 (S.D.N.Y.1983) (The hourly rate awarded "recognizes the firm's expertise but not the risk of loss factor...."); *Desimone,* 83 F.R.D. at 622 ("Once the lawyer's time has been valued, the figure obtained must be increased to reflect the risk of nonpayment inherent in contingent fee arrangements....").

In the case at bar, there was a significant possibility that the plaintiffs would not prevail. The issues raised were complex and the suit involved numerous parties with widely diverse interests to be protected. The case dealt with an unsettled area of the law, and both the law and facts were strongly contested. When the case was commenced, it was unclear that a satisfactory remedy could, in fact, be developed and implemented. Thus, an upward adjustment in this case is necessary in order to compensate the plaintiffs' attorneys for the risk of nonpayment that existed.

Another factor in this case which supports an increase of the lodestar figure is the long delay between the rendering of services and the receipt of payment. The case was commenced in 1976, the Consent Decree was approved in 1978, and the litigation against the Bedford Gardens defendants ended in 1981. It is now 1984. Because inflation and the loss of interest effectively dilute the fees granted in this case, requiring that the defendants pay only the lodestar figure, without more, would undercompensate the plaintiffs' attorneys. *See Willowbrook,* 711 F.2d at 1152; *accord University College,* 706 F.2d at 1210 ("Such delay obviously dilutes the eventual award and may convert an otherwise reasonable fee into an unreasonably low one."); *Copeland v. Marshall,* 641 F.2d 880, 893 (D.C.Cir.1980) (en banc) ("[P]ayment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime, which use, particularly in an inflationary era, is valuable."); *Clarke v. Amerada Hess Corp.,* 500 F.Supp. 1067, 1076 (S.D.N.Y.1980) (Such delay should be "left to the Court's consideration of a 'risk factor' to be applied *after* calculating the value of [the attorneys'] time at rates prevailing when the services were rendered.") (emphasis in original).

Based on the contingent nature of this case and the long delay in payment, the

Court finds that an upward adjustment of 1.25 is appropriate. Although this is a more modest increase than that requested by the plaintiffs, it is consistent with increases granted in similar cases. *See, e.g., Craik,* 738 F.2d at 350 (1.25 increase granted); *Yates,* 719 F.2d at 1534 (1.35 increase granted); *Vulcan Soc'y,* 533 F.Supp. at 1065 (1.50 increase granted); *Desimone,* 83 F.R.D. at 623 (1.20 increase granted). Increasing the lodestar figure of $137,507.50 by a multiplier of 1.25 results in an award of $171,884.37 against the Bedford Gardens defendants for the litigation which took place from 1976 to 1981.

*Compensation for Time Spent on the Instant Motion*

■ Plaintiffs' attorneys also request compensation for the hours spent on the instant application for an award of attorneys' fees under § 1988. Plaintiffs' attorneys are entitled to the compensation re-quested.[12] *See Gagne v. Maher,* 594 F.2d 336, 343–44 (2d Cir.1979), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

Where a prevailing party is entitled to attorneys' fees under § 1988, litigation is necessary to show that the fees requested are reasonable. Failure to compensate for time spent on that litigation would effectively lower the overall value of the award granted. Such a result would conflict with the congressional policy of encouraging competent attorneys to represent clients in civil rights cases.

■ The plaintiffs' attorneys are seeking fees for services rendered in connection with the instant motion from 1981 to date. The following chart sets out the hourly rates and the number of hours claimed for services rendered on this motion. The Court finds that the rates requested and hours submitted are reasonable.

| | No. of Hours | Hourly Rate | Lodestar Amount |
|---|---|---|---|
| H. Teitelbaum (1968 graduate) | 5.25 | $150 | $ 787.50 |
| K. Kimerling (1969 graduate) | 39.50 | 150 | 5,925.00 |
| P. Murray (1973 graduate) | 22.00 | 135 | 2,970.00 |
| P. Paden (1975 graduate) | 5.50 | 135 | 742.50 |
| H. Soto (1977 graduate) | 248.25 | 110 | 27,307.50 |
| | | Total | $37,732.50 |

An examination of similar cases, in which awards have been based on post-1980 market rates, supports the conclusion that the above hourly rates are reasonable. *See, e.g., Tikalsky v. City of Chicago,* 585 F.Supp. 813, 816 (N.D.Ill.1984) (awarding $150 per hour); *New York State Teamsters Conference Pension and Retirement Fund v. Hoh,* 561 F.Supp. 687, 689–90 (N.D.N.Y.1983) (awarding $75–$175 per hour); *Tasby v. Wright,* 550 F.Supp. 262, 280–82 (N.D.Tex.1982) (awarding $60–$175 per hour); *National Lawyers Guild v. At-*

12. No multiplier will be applied to the fees awarded for the time spent on the instant motion for attorneys' fees. Only the fees awarded for the 1976–81 litigation will be increased. "Courts have disfavored the application of multipliers to the fees incurred in attorney-fee applications." *Vulcan Soc'y,* 533 F.Supp. at 1066 (citing cases). Once it has been established that the plaintiffs are the prevailing parties, compensation is guaranteed and the contingency risk factor ceases to exist. Thus, an award based on prevailing market rates provides adequate compensation for time expended on a motion for attorneys' fees. *See Northcross,* 611 F.2d at 638.

*torney General,* 94 F.R.D. 616, 621–22 (S.D.N.Y.1982) (awarding $90–$130 per hour).

The rates set forth in the above table are also reasonable in light of the attorneys' background and experience.[13] All of the attorneys involved have extensive litigation experience and impressive academic records. *See* Affidavit of Kenneth Kimerling, sworn to October 14, 1983 ("Kimerling Aff."), at 2.

The defendants argue that the plaintiffs' request for compensation for 320.5 hours spent on this fee application is excessive. However, the Court finds that the total number of hours expended on this part of the litigation is reasonable and compensable. The motion was complicated by the 1978 *Willowbrook* decision, 711 F.2d 1136, and required additional briefs concerning an appropriate hourly rate to be awarded. It was further complicated by the bankruptcy of the defendant Ross-Rodney; the plaintiffs' attorneys had to spend time researching and addressing issues resulting from that event. *See* Kimerling Aff. at Exh. A. Moreover, the defendants' strenuous opposition to this motion for fees has substantially escalated the number of hours required by plaintiffs' attorneys in order to substantiate and defend the fees requested.

Attorneys' fees in the amount of $37,-732.00 are awarded to plaintiffs' attorneys for the services rendered in connection with this application for fees.

*Costs*

■ In addition to attorneys' fees, the plaintiffs are seeking compensation for out-of-pocket costs totalling $7,263.83. In a civil rights case such as this § 1988 entitles the prevailing party to recover all reasonable expenses. *See Henry v. Webermeier,* 738 F.2d 188, 192 (7th Cir.1984) ("[T]he case law [applying § 1988] overwhelmingly supports the proposition that 'attorney's fee' includes out-of-pocket expenses...."); *Jones v. Diamond,* 636 F.2d at 1382; *Northcross,* 611 F.2d at 639.

In order to insure that certain basic rights would be protected by means of judicial redress, Congress enacted § 1988 requiring that the costs of litigation be paid by the losing party. Out-of-pocket expenses and disbursements, which attorneys in private practice would ordinarily bill to their clients, must be included in the amount paid by the losing party, or § 1988 will fall short of its intended purpose. *See Henry,* 738 F.2d at 192.

The costs incurred by the plaintiffs are reasonable and were necessary for the successful litigation of this case. The plaintiffs may recover $7,263.83 from the Bedford Gardens defendants for costs.

*Interest*

■ This Court entered an order on August 23, 1983 granting plaintiffs' request for attorneys' fees and costs. *See* Order filed August 23, 1983, 76 Civ. 2125 (CHT). Under Title 28 U.S.C. § 1961 (1982) ("§ 1961"),[14] the plaintiffs are entitled to interest on the award of attorneys' fees, calculated from the date of the 1983 order. *See Spain v. Mountanos,* 690 F.2d 742, 747–48 (9th Cir.1982) (applying § 1961 to an award of attorneys' fees); *Gates,* 616 F.2d at 1279–80 ("[T]he awarding of interest is entirely consistent with the purpose

---

**13.** Hourly rates of $110, $135, and $150 will be awarded for services rendered by Hector Soto, Patricia Murray and Kenneth Kimerling, respectively, even though lower hourly rates were requested by the plaintiffs. These three attorneys were employed by non-profit organizations at the time services were rendered, and the rates proposed by the plaintiffs were based on the 1983 *Willowbrook* decision, 711 F.2d at 1150–52, which set a maximum rate awardable to attorneys employed by non-profit organizations. *See* Kimerling Aff. at 3. Since this type of limitation on fees for attorneys employed by non-profit organizations was specifically rejected in

*Blum,* 104 S.Ct. at 1545–47, the hourly rates awarded herein have been modified from those requested in order to reflect prevailing market rates. *See Tikalsky,* 585 F.Supp. at 816 (The court awarded higher hourly rates than plaintiffs requested.).

**14.** Section 1961 provides in relevant part:
Interest shall be allowed on any money judgment in a civil case recovered in a district court ... [and] shall be calculated from the date of the entry of judgment ....

of the Act: to ensure effective enforcement of the civil rights laws." *Id.* at 1275); *Preston v. Thompson,* 565 F.Supp. 294, 297 (N.D.Ill.1983) ("Every reported case to address the issue has held that interest is available on an award of attorney's fees under § 1988." (citations omitted)).

If a dollar amount had been set by this Court when the order was entered in 1983, the plaintiffs' attorneys would have been entitled to immediate payment. Since the amount of the award was not set forth at that time, the defendants have enjoyed the use of that money and the plaintiffs' attorneys have not.

Interest on the entire award is hereby granted, pursuant to § 1961, to be calculated from August 23, 1983. *See City of Detroit v. Grinnell,* 575 F.2d 1009, 1010 (2d Cir.1977).

## SUMMARY

 The following chart provides a list of fees and expenses owed by the Bedford Gardens defendants:

| | |
|---|---|
| Attorneys' fees incurred 1976–78 (40% of lodestar) | $ 61,595.00 |
| Attorneys' fees incurred 1978–81 | + 75,912.50 |
| Total Lodestar | $137,507.50 |
| Upward Adjustment (1.25) | × 1.25 |
| Adjusted Fees | $171,884.37 |
| Compensation for this motion, 1981–1984 | 37,732.50 |
| Costs | 7,263.83 |
| Total | $216,880.70 |

The total amount of the award to be paid by the Bedford Gardens defendants is $216,880.70, together with interest at 9% from August 23, 1983 to the date of judgment. Submit judgment within 10 days.

So ordered.